# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 14-0217

WILLIAM R. SOWERS, APPELLANT,

V.

ROBERT A. MCDONALD,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided                    February 12, 2016)

*Robert V. Chisholm* and *Shatilla Shera B.D. Cairns*, both of Providence, Rhode Island, were on the brief for the appellant.

*Leigh A. Bradley*, General Counsel; *Mary Ann Flynn*, Chief Counsel; *Richard A. Daley*, Deputy Chief Counsel, and *Mark D. Vichich*, all of Washington, D.C., were on the brief for the appellee.

Before LANCE, SCHOELEN, and GREENBERG, *Judges*.

SCHOELEN, *Judge*: The appellant, William R. Sowers, through counsel, appeals a December 13, 2013, Board of Veterans' Appeals (Board) decision in which the Board denied an initial compensable rating for postoperative residuals of a right ring finger fracture.[1] Record of Proceedings (R.) at 3-23. This appeal is timely, and the Court has jurisdiction to review the Board's

---

[1] The Court lacks jurisdiction over the claims for entitlement to service connection for kidney stones and hypothyroidism that were remanded, and they will not be addressed further. *See* 38 U.S.C. §§ 7252(a), 7266(a); *Howard v. Gober*, 220 F.3d 1341, 1344 (Fed. Cir. 2000). The Board also granted a 10% disability rating, but no higher, throughout the initial rating period for functional impairment of the right index finger, a separate 10% evaluation, but no higher, from June 20, 2013, for a painful scar, and an initial 10% evaluation, but no higher, for hypertension. R. at 19. The Board's grants of 10% disability ratings for functional impairment of the right index finger, a painful scar, and hypertension are favorable findings, which the Court cannot disturb. *See Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007). Additionally, Mr. Sowers does not challenge the Board's decision on these matters. *See* Appellant's Brief (Br.) Accordingly, the Court finds that Mr. Sowers has abandoned his appeal of the Board's decision as to these issues, and without considering the merits, the Court will dismiss the appeal as to the abandoned issues. *See Pederson v. McDonald*, 27 Vet.App. 276, 285 (2015) (en banc).

March 2014 decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). This matter was referred to a panel of the Court without oral argument to decide whether the Board erred in finding that Mr. Sowers was not entitled to a compensable rating under 38 C.F.R. § 4.59 (2015) because the relevant diagnostic code (DC) he is rated under does not have a compensable rating. For the reasons discussed below, the Court finds that the Board was correct in its determination: Section 4.59 is limited by the DC applicable to a claimant's disability, and where that DC does not provide a compensable rating, § 4.59[2] does not apply. Accordingly, the Court will affirm the Board's decision on this matter. However, the Court will also vacate the portion of the Board's decision addressing extraschedular consideration and remand that matter for further proceedings consistent with this decision.

## I. BACKGROUND

Mr. Sowers served on active duty in the U.S. Air Force from July 1976 to December 1992 and from December 2002 to March 2005. R. at 424-28, 849, 866. Service treatment records reflect that while playing football in October 1976, Mr. Sowers fell and fractured his right ring finger. R. at 896-906. In May 2006, finding that Mr. Sowers fractured the distal interphalangeal joint and sustained mallet finger deformity during service, the regional office (RO) granted service connection for a right ring finger disability. R. at 783-95. The RO assigned a noncompensable evaluation under

---

[2] Section 4.59 provides:

With any form of arthritis, painful motion is an important factor of disability, the facial expression, wincing, etc., on pressure or manipulation, should be carefully noted and definitely related to affected joints. Muscle spasm will greatly assist the identification. Sciatic neuritis is not uncommonly caused by arthritis of the spine. The intent of the schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. Crepitation either in the soft tissues such as the tendons or ligaments, or crepitation within the joint structures should be noted carefully as points of contact which are diseased. Flexion elicits such manifestations. The joints involved should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint.

2

DC 5010-5230,[3] effective April 1, 2005. R. at 794. The RO also granted service connection for a right index finger disability. R. at 786.

The next month, Mr. Sowers filed a Notice of Disagreement (NOD) challenging the rating assigned for his right ring finger disability. R. at 775-78. Specifically, Mr. Sowers asserted that a higher rating was warranted because he had "severe limited range of motion along with pain." R. at 777. After the RO issued a May 2007 Statement of the Case (SOC), Mr. Sowers perfected his appeal to the Board. R. at 746-48, 749-74. In a March 2008 VA medical examination, the examiner noted that with regard to both his index and ring fingers, Mr. Sowers "[did] not report any specific symptomatology, that is, no pain, no stiffness, swelling, locking, [or] impairment in the activities of daily living." R. at 718-19. The examiner reported that Mr. Sowers was "able to carry out his usual occupation" of mail carrier for the U.S. Postal Service. *Id.* On examination, he was able to approximate the tip of his right ring finger to the palmar crease without difficulty. R. at 720.

Following this examination, the RO issued a Supplemental SOC (SSOC) denying a compensable rating for the right ring finger. R. at 346-47. At a January 2012 Board hearing, Mr. Sowers testified that he experienced problems with fine motor control. R. at 271. He asserted that both his right index and ring fingers had deteriorated since his last examination. R. at 272-74. He testified that he is required to sort mail as part of his job and that his finger disabilities cause him to "miss throw" and that he has to review his work to make sure he did not make a mistake. R. at 275.

A treatment note from later that month reflects that Mr. Sowers experienced limited active range of motion of his index and ring fingers. R. at 265. An April 2012 Board decision remanded the matter for a new VA examination evaluating his finger disabilities. R. at 259-60. In the subsequent June 2013 VA examination, the examiner noted that the right ring finger "has occasional pain and stiffness with decreased [range of motion]. [He] [h]as a bump on the volar side of the proximal phalanx and it locks up occasionally." R. at 133. Mr. Sowers was able to perform repetitive use testing without any additional limitation of motion. R. at 135. The examiner also

---

[3] DC 5010 applies to "Arthritis, due to trauma, substantiated by X-ray findings: Rate as arthritis, degenerative." 38 C.F.R. § 4.71a, DC 5010 (2015). DC 5230 applies to "Ring or little finger, limitation of motion." 38 C.F.R. § 4.71a, DC 5230 (2015).

indicated that Mr. Sowers did not have ankylosis of the thumb or fingers or any flexion or extension limitations in his right ring finger.  R. at 137, 139.

## II. THE DECEMBER 2013 BOARD DECISION

### A. Schedular Rating for Right Ring Finger

In the December 2013 decision on appeal, the Board noted that the right ring finger disability had been rated under hyphenated DC 5010-5230.  R. at 13.  However, the Board determined that DC 5010 was not appropriate for evaluating the right ring finger disability because arthritis had not been substantiated by x-ray findings, as required by DC 5010.  R. at 14.  In fact, the Board concluded that no DC pertaining to arthritis was applicable to Mr. Sowers's claim.  R. at 15.  The Board further found that the evidence did not establish ankylosis of the right ring finger or that Mr. Sowers's "disability picture approximates amputation of the right ring finger . . . even with consideration of painful motion and other factors."  *Id.*  The Board concluded that the right ring finger was most appropriately rated under DC 5230[4] with a noncompensable rating.  R. at 14.

Having found some evidence of painful motion, the Board stated that the "Rating Schedule does not provide for even a 10 [%] rating for any amount of limitation of motion of the ring finger. Thus, under § 4.59, there is no "minimum compensable rating" for limitation of motion of a ring finger joint."  R. at 15.  Consequently, the Board concluded that despite evidence of painful motion, a compensable rating was not warranted.  *Id.*

### B. Extraschedular Consideration

Considering each finger disability separately, the Board found that extraschedular consideration was not warranted.  R. at 17-18.  Regarding the right index finger, the Board noted that this disability caused "pain, painful motion, limitation of motion, weakness, numbness, and reduced grip" – all symptoms, according to the Board, that were contemplated by the rating criteria.  R. at 18. As to the right ring finger, the Board found that painful motion was contemplated by the rating schedule.  *Id.*  Accordingly, the Board denied extraschedular consideration.  This appeal followed.

---

[4] "Ring or little finger, limitation of motion: Any limitation of motion........0." 38 C.F.R. § 4.71a, DC 5230.

## III. THE PARTIES' ARGUMENTS

Mr. Sowers argues that the Board erred when it found that he was not entitled to a compensable rating for his painful motion under § 4.59. Appellant's Br. at 6-7. He asserts that § 4.59 is designed to add flexibility to the rating schedule. Appellant's Reply Br. at 2-3. Specifically, he notes that § 4.59's stated intent is to recognize actually painful joints. *Id.* at 1-2. He then argues that the plain meaning of the phrase "entitled to at least the minimum compensable rating for the joint" directs VA to apply the minimum compensable rating available across all DCs pertaining to the affected joint. *Id.* at 4-5. Mr. Sowers acknowledges that his assigned DC – DC 5230 – does not provide a compensable rating, but he asserts that other DCs affecting the same joint provide "a guideline for the minimum compensable rating for the joint of the right ring finger." *Id.* at 4. In particular, he argues that the DC for ankylosis of the ring finger – DC 5227 – allows for a compensable rating where the disability equates to amputation. *Id.* Because DC 5227 is a DC relating to the ring finger – his affected joint – he argues that VA must use it to build up[5] a rating that recognizes his disability and entitles him to a compensable rating under § 4.59. Appellant's Response to the Court's Order (Response) at 4-5.

The Secretary maintains that "there was no possible means by which § 4.59 could have applied here" because DC 5230 does not have a compensable rating, and, in order for § 4.59 to apply, the DC the individual is rated under must have a minimum compensable rating available. Secretary's Br. at 10. Because DC 5230 provides that *any* amount of limited motion warrants only a 0% disability rating, the Secretary argues, this more specific rating trumps the general intent of compensating painful motion in § 4.59. *Id.* at 10. Essentially, the Secretary asserts that § 4.59 may not apply to the few DCs with only a 0% rating. Secretary's Response at 6. The Secretary maintains that the plain meaning of § 4.59 requires that the regulation be applied in conjunction with the assigned DC. *Id.* at 2-5. Alternatively, the Secretary argues that, should the Court find the language

---

[5] Mr. Sowers relies on 38 C.F.R. § 4.27 (2015), which provides that "[w]hen an unlisted disease, injury, or residual condition is encountered, requiring rating by analogy, the DC number will be 'built-up' as follows: The first 2 digits will be selected from that part of the schedule most closely identifying the part, or system, of the body involved; the last 2 digits will be '99' for all unlisted conditions. This procedure will facilitate a close check of new and unlisted conditions, rated by analogy."

of the regulation ambiguous, the Secretary's interpretation of his own regulation is entitled to deference. *Id.* at 6-7.

## IV. ANALYSIS

### A. The Rating Schedule and § 4.59

The rating schedule was promulgated in accordance with the direction in 38 U.S.C. § 1155 for VA to create "a schedule of ratings of reductions in earning capacity from specific injuries . . . based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations." VA, accordingly, promulgated a rating schedule recognizing specific disabilities identified by DCs. Each DC has specific criteria designed to reflect the nature and severity of the injury with corresponding ratings based on the average impairment in earning capacity. *See* 38 C.F.R. § 3.321(a) (2015). VA must exercise great care in selecting a DC from the schedule. *See Copeland v. McDonald*, 27 Vet.App. 333, 336 (2015). The rating schedule may not be all-encompassing, but "coordination of rating with impairment of function will . . . be expected in all instances." 38 C.F.R. § 4.21 (2015) ("In view of the number of atypical instances it is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified.").

To aid in accurately reflecting impairment of function, some of the regulations preceding the rating schedule in parts three and four of title 38 of the Code of Federal Regulations add additional flexibility to the listed DCs. *See Copeland*, 27 Vet.App. at 338 (noting existence of safeguards to compensate symptoms outside rating criteria). For example, as Mr. Sowers notes, when a DC's criteria are not adequate to contemplate a claimant's disability picture, extraschedular consideration may be warranted. 38 C.F.R. § 3.321(b). Section 4.20 allows for rating by analogy, and § 4.27 allows for a customized DC to be created. However, these flexible provisions are limited by the rating schedule. The rating schedule must be deemed inadequate before extraschedular consideration is warranted. 38 C.F.R. § 3.321(b); *Thun v. Peake*, 22 Vet.App. 111, 115 (2008). Similarly, §§ 4.20 and 4.27 apply only "when an unlisted condition is encountered." 38 C.F.R. §§ 4.20, 427 (2015). Additionally, consideration and application of these regulations does not guarantee a compensable rating.

6

Recently, in *Petitti v. McDonald*, 27 Vet.App. 415 (2015), the Court noted that, like the other regulations preceding the rating schedule for the musculoskeletal system, § 4.59 "explain[s] how to arrive at proper evaluations under the DCs appearing in the disability rating schedule." *Id.* at 424. Like the regulations discussed above, § 4.59 adds flexibility to the rating schedule that is also limited by the terms of the DCs. Because painful motion of a joint is not a recognized disability with a corresponding DC, § 4.59 acknowledges that a claimant's disability may cause painful motion but still not be severe enough to warrant a compensable rating under the assigned DC. Accordingly, § 4.59 seeks to provide a claimant with at least the minimum compensable rating for his painful joint.[6] 38 C.F.R. § 4.59. Section 4.59 states in relevant part:

> The intent of the schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. *It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint.*

(emphasis added). Addressing the plain meaning of the regulation, *Petitti* noted that the emphasized sentence "ensures that a veteran experiencing an 'actually' painful joint is entitled to at least the minimum compensable rating for the joint *under the appropriate DC* to the joint involved." *Petitti*, 27 Vet.App. at 424. Accordingly, the Court considered whether Mr. Petitti was entitled to a compensable rating under DC 5002 (the DC under which he was rated) when it was read "in light of" or "in conjunction with" § 4.59. *Id.* at 426. In doing so, the Court acknowledged that it had followed a similar approach in *Lichtenfels v. Derwinski* 1 Vet.App. 484 (1991) when considering the application of § 4.59 in light of DC 5003: the assigned DC in that case. Building upon *Lichtenfels*, *Petitti* emphasized that § 4.59 is not an independent provision that may be applied without an underlying DC: § 4.59 is read in conjunction with, and subject to, the DC. Consistent with *Lichtenfels* and *Petitti*, the Court will begin its analysis with Mr. Sowers's assigned DC: DC 5230.

---

[6] For example, a claimant with a knee disability may have full range of motion but still have pain throughout extension. Absent additional limitation of motion, that claimant would not be entitled to a compensable rating under the appropriate DC, DC 5261: "Leg, limitation of extension," but because he has painful motion, § 4.59 would provide a compensable rating under DC 5261.

B. Language of DC 5230

In the decision on appeal, the Board determined that DC 5230 most accurately reflected Mr. Sowers's disability. The Board noted that, as there was no x-ray evidence substantiating an arthritis diagnosis, Mr. Sowers's original hyphenated DC including DC 5010 for arthritis was not appropriate. R. at 14. The Board also found that the evidence that Mr. Sowers retained motion and use of his right finger ruled out ankylosis of the right ring finger. *Id.* The Board also determined that the evidence did not show that Mr. Sowers's "disability picture approximates amputation of the right ring finger." *Id.* The Board acknowledged that, despite medical evidence showing no limitation of motion, Mr. Sowers reported "occasional pain and stiffness with decreased range of motion." *Id.* The Board found that DC 5230, limitation of motion of the ring finger, was the appropriate DC. Mr. Sowers does not challenge the Board's determination that DC 5230 is the appropriate DC for his disability. Appellant's Reply Br. at 4; *see Cromer v. Nicholson*, 19 Vet.App. 215, 217 (2005) ("[I]ssues not raised on appeal are considered abandoned."), *aff'd*, 445 F.3d 1346 (Fed. Cir. 2006).

The "interpretation of a statute or regulation is a question of law," *Lane v. Principi*, 339 F.3d 1331, 1339 (Fed. Cir. 2003), and the Court's review is performed de novo, *Kent v. Principi*, 389 F.3d 1380, 1384 (Fed. Cir. 2004); *see also Smith v. Brown*, 35 F.3d 1516, 1523 (Fed. Cir. 1994) (stating that the canons of statutory interpretation also apply to interpreting regulations). Regulatory interpretation begins with the language of the regulation, the plain meaning of which is derived from its text and its structure. *See Sharp v. Shinseki*, 23 Vet.App. 267, 271 (2009); *see also McGee v. Peake*, 511 F.3d 1352, 1356 (Fed. Cir. 2008); *Gardner v. Derwinski*, 1 Vet.App. 584, 586 (1991).

DC 5230 provides: "Ring or little finger, limitation of motion: Any limitation of motion . . . 0." 38 C.F.R. § 4.71a, DC5230. As noted above, disability ratings are based on the average impairment in earning capacity resulting from a disability affecting the body or a part of the body. Disability "evaluations are based upon lack of usefulness [ ] of these parts." *Mitchell v. Shinseki*, 25 Vet.App. 32, 36 (2011). A 0% disability rating for "any limitation of motion" indicates that there is no reduction in earning capacity from a right ring finger disability, irrespective of impairment of motion.

8

Moreover, unlike other DCs, DC 5230 does not instruct that other DCs should be considered. The inclusion of criteria in one DC indicates that the Secretary's exclusion of that criteria elsewhere was purposeful. *See Hudgens v. Gibson*, 26 Vet.App. 558, 561 (2014). Some DCs include instructions for considering other DCs. DC 5227, addressing ankylosis of the ring or little finger, like DC 5230, lists only a noncompensable rating for ankylosis – favorable or unfavorable. But DC 5227 also includes a note allowing for a compensable rating when an "evaluation as amputation is warranted" or where impairment of the ring finger limits the motion of other digits or the hand as a whole. The other individual-finger-ankylosis DCs also include this note. *See* 38 C.F.R. § 4.71a, DCs 5224 (thumb), 5225 (index finger), 5226 (long finger). As discussed in *Lichtenfels* and *Petitti*, both DC 5002 and 5003 specifically provide that individual joints may be rated for limitation of motion "under the appropriate DC for the specific joint or joints involved." 38 C.F.R. § 4.71a, DCs 5002, 5003. Many of the intermediate-level criteria for prosthetic implants identify specific DCs that may be used for rating by analogy. 38 C.F.R. § 4.71a, DCs 5051, 5052, 5053, 5055, 5056. DC 5230 does not include a note allowing consideration under other DCs. Therefore, VA clearly expressed its determination that DC 5230 be the only DC applicable to a right ring finger disability based on limitation of motion and that limitation of motion of the right ring finger does not warrant a compensable disability rating.

Reading § 4.59 in conjunction with DC 5230, Mr. Sowers is not entitled to a compensable rating under this DC. Section 4.59 intends to recognize actually painful joints and provide at least the minimum compensable rating for the joint. There is no minimum compensable rating available under DC 5230, that is, *any* level of disability warrants a 0% rating. DC 5230's specific finding that there is no impairment in earning capacity from any limitation of motion of the ring finger trumps the general intent in § 4.59 to compensate painful motion with at least the minimum compensable rating. *See Beverly v. Nicholson*, 19 Vet.App. 394, 402 (2005) (acknowledging that general "cannon of interpretation that the more specific trumps the general"). Because no impairment of motion warrants a compensable rating under DC 5230, reading § 4.59 in conjunction with DC 5230, Mr. Sowers is not entitled to a compensable disability rating under his assigned DC.

C. Mr. Sowers's Proposed Interpretation

Nevertheless, Mr. Sowers argues that the noncompensable rating under DC 5230 does not preclude him from receiving a compensable rating because other DCs related to the ring finger joint *do* provide compensable ratings. Appellant's Reply Br. at 4-5. He argues that § 4.59 provides that actually painful joints receive a compensable rating. Appellant's Response at 4-5. He maintains that the words "the joint" require that, because one of the DCs relating to the affected joint has a compensable rating —here DC 5227, which provides a compensable rating where right ring finger ankylosis approximates amputation—he is entitled to a compensable rating for his painful motion. *Id.* at 5. He contends that, under this approach, "VA must build up a [DC] which recognizes the disability consisting of painful motion and provides a compensable rating." *Id.* at 4.

Mr. Sowers's semantic argument seeks to twist the law to essentially create a new DC that recognizes and compensates for his pain as a unique disability. His efforts are flawed for a number of reasons that center around a common point: If the Rating Schedule does not provide a compensable rating, a claimant may not shop around among DCs to find a better deal.

Recently, in *Copeland*, the Court addressed circumstances where an appellant asserted that, rather than receiving ratings under the listed DCs for his conditions – pes planus and hallux valgus – he should be able to avail himself of other "potentially appropriate" DCs that provided a higher disability rating. 27 Vet.App. at 336. The Court rejected the appellant's attempt to choose his own DC finding that "a listed condition should be rated under the DC that specifically pertains to it"; rating by analogy is not appropriate where a condition has a listed DC. *Id.* at 336-37. Consistent with *Copeland*, the Court finds that there is no support in § 4.59 for Mr. Sowers's assertion that he is entitled to consideration of every potentially applicable DC in order to ensure he receives a compensable disability rating. His proposal is contrary to the regulation's text and leads to absurd results.

Mr. Sowers's interpretation would render portions of § 4.59's text meaningless. Section 4.59 provides "at least the minimum compensable rating for the joint." Every joint in the rating schedule has at least one DC with a 10% disability rating. Thus, by allowing claimants to shop around for a DC related to their affected joint, Mr. Sowers would create a de facto 10% disability rating for painful motion because there would always be a 10% disability rating for the joint available. If VA

10

intended to guarantee a 10% disability rating for actually painful joints, it could have stated that actually painful joints are entitled to a 10% disability rating. VA took this approach in addressing noncompensable limitation of motion for arthritis and rheumatoid arthritis. DC 5002 and DC 5003 each provide that "[w]here . . . the limitation of motion of the specific joint or joints involved is noncompensable under the [appropriate diagnostic] codes[,] a rating of 10% is applicable." 38 C.F.R. § 4.71a, DC 5002; *accord* 38 C.F.R. § 4.71a, DC 5003. Here, the text does not suggest any particular disability rating will be assigned. Section 4.59 may intend to compensate painful motion, but it does not guarantee a compensable rating.[7] Instead, § 4.59 employs conditional language that must be read in conjunction with the appropriate DC to be understood. *See Petitti*, *supra*. The text of the regulation does not invite a claimant to shop around.

The Court is further concerned that, although Mr. Sowers's approach is advantageous for claimants rated under DC 5230, it would not always be beneficial. For example, the minimum compensable rating under DC 5201, "Arm, limitation of motion of," is 20%. 38 C.F.R. § 4.71a, DC 5201 (2015) (for impairment "[a]t the shoulder level"). But the minimum compensable rating available across *all* DCs for the shoulder as a joint is a 10% disability rating under DC 5203, "Clavicle or scapula, impairment of."[8] Applying Mr. Sowers's proposed interpretation, this claimant would not be entitled to the 20% rating under the applicable DC, but instead would receive a 10% disability rating because that is the minimum compensable rating available for the joint.

Finally, the Court has an "affirmative duty to avoid a literal interpretation of regulatory language that would produce 'an illogical and absurd result.'" *Mitchell*, 25 Vet.App. at 43 (quoting *Zang v. Brown*, 8 Vet.App. 246, 252-53 (1995)). The Court recognizes that the regulation uses the

---

[7] To the extent Mr. Sowers argues that the Secretary took a contrary position in *Mitchell* – indicating that painful joints are always entitled to at least a 10% disability rating – this argument lacks merit. Appellant's Br. at 4-5. In *Mitchell*, the appellant sought the maximum disability rating available for her knee disability based on painful motion. 25 Vet.App. at 34. The applicable DCs in *Mitchell*, DCs 5260 and 5261, offer disability ratings from 0% to 30% and 0% to 50% respectively. 38 C.F.R. § 4.71a, DCs 5260, 5261. The Secretary did argue that "compensation for [pain on motion] (whether arthritic or nonarthritic) is limited to 10% per joint when there is 'no actual or compensable limitation of motion.'" *Id.* at 36. But, the Secretary was explaining that the appellant was not entitled to the *maximum* rating; without actual or compensable limitation of motion, the appellant was entitled to *no more* than a 10% disability rating under § 4.59 – the minimum rating afforded by the assigned DCs. *Id.* Therefore, considering the Secretary's position in *Mitchell* in context, it is consistent with his position in this case, and Mr. Sowers's argument misses its mark.

[8] DC 5203 provides 10% disability ratings for nonunion of the clavicle or scapula without loose movement and for malunion of the clavicle or scapula. § 4.71a, DC 5203.

11

phrase "the joint" and that the ordinary meaning of this phrase would suggest an ability to shop around, or at the minimum, not prohibit it. But, as discussed, this interpretation is inconsistent with the rating schedule and VA's finding that any limitation of motion of the right ring finger is not compensable. If the Court read "the joint" broadly, as suggested, Mr. Sowers, an individual with only slight pain and occasional stiffness, would be rated on par with an individual whose finger was amputated. He would also receive a rating for pain in a joint under a DC intended to compensate the absence of that joint. In addition to the absurd result on the specific facts of this case, by reading the intent in §4.59 as broadly as Mr. Sowers suggests – that his painful motion entitles him to a compensable rating regardless of his assigned DC – this Court would essentially create a freestanding painful motion disability that is always entitled to a 10% disability rating.[9] "When an interpretation is not compelled by the language of the regulation, is not supported by caselaw, and has absurd effects, it must be firmly rejected." *Mitchell*, 25 Vet.App. at 43.

Mr. Sowers attempts to use § 4.59 to circumvent the statutory and regulatory framework of the rating schedule and assign a rating of his choosing for his disability. Mr. Sowers's argument is little more than a disagreement with how the Secretary has chosen to rate limitation of motion of the right ring finger, which is beyond this Court's authority to review. 38 U.S.C. § 7252(b); *see Copeland*, 27 Vet.App. at 338. Because there is no minimum compensable rating available in DC 5230, reading DC 5230 in conjunction with § 4.59, Mr. Sowers is not entitled to a minimum compensable rating for painful motion. Therefore, the Board did not err in deciding this matter, and the Court will affirm this portion of the Board's decision.

### D. Extraschedular Consideration

Once a disability is found to be service connected, the level of disability compensation is determined using the criteria in the rating schedule established in a series of regulations located in part 4 of title 38 of the Code of Federal Regulations. *Thun v. Peake*, 22 Vet.App. 111, 114 (2008). In exceptional cases, the rating schedule may be found inadequate to compensate a claimant's unique

---

[9] In 2003, VA proposed to revise § 4.59 to reflect specific evaluations of 10%, 20%, 30%, and 100% for painful motion that would then be combined under the appropriate DC for the condition. 68 Fed. Reg. 6998-01 (Feb. 11, 2003), but this proposed revision was withdrawn the following year and never enacted. *See* Fed. Reg. 22,757 (Apr. 27, 2004).

set of symptoms and an extraschedular rating may be approved by the Under Secretary for Benefits or the director of the Compensation Service. 38 C.F.R. § 3.321(b)(1).

The threshold question in determining whether the appellant is entitled to an extraschedular rating is whether the evidence presents "such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate." *Thun*, 22 Vet.App. at 115. If an exceptional disability picture is found, the RO or Board must determine whether related factors exist such "as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards." 38 C.F.R. § 3.321(b)(1); *Thun*, 22 Vet.App. at 116.

Mr. Sowers argues that the Board erred in finding that he was not entitled to extraschedular consideration. His briefing raises three points of error. First, the Board was obligated to consider § 4.59 in its extraschedular analysis. Second, the Board's finding that his symptoms were contemplated by the rating schedule was conclusory and unsupported by adequate reasons and bases. Finally, the Board should have considered the combined effects of the finger disabilities on his right hand. The Secretary responds that Mr. Sowers has not demonstrated that he is entitled to extraschedular consideration, even considering the combined effects of his disabilities. Moreover, he asserts that the Board's reasons and bases were adequate.

In August 2014, after the Board's March 2014 decision, the U.S. Court of Appeals for the Federal Circuit held that, in considering whether a claim should be referred for extraschedular consideration pursuant to § 3.321, the Board is required to consider the "collective impact of all [the appellant's] disabilities." *Johnson v. McDonald*, 762 F.3d 1362, 1365 (Fed. Cir. 2014) ("Limiting referrals for extraschedular evaluation to considering a veteran's disabilities individually ignores the compounding negative effects that each individual disability may have on the veteran's other disabilities."). As *Johnson* was issued during the briefing of this case, Mr. Sowers raised this issue for the first time before the Court.

Although this Court "has jurisdiction to hear arguments presented to it in the first instance, provided it otherwise has jurisdiction over the veteran's claim," whether to entertain an argument raised for the first time at the Court is "a matter of discretion." *Maggitt v. West*, 202 F.3d 1370, 1377-78 (Fed. Cir. 2002). One boundary on this Court's discretion is its role as an appellate tribunal,

13

which precludes it from finding facts in the first instance. *See Hensley v. West*, 212 F.3d 1255, 1263 (Fed. Cir. 2000) (stating that "appellate tribunals are not appropriate fora for initial fact finding"); *see also* 38 U.S.C. § 7261(c). Although the Secretary argues that the evidence does not support a finding that extraschedular consideration was warranted, entertaining this argument would require the Court to fact-find in the first instance. Thus, given the procedural posture of this appeal, the Court will exercise its discretion here and vacate the Board's decision for the Board to address the appellant's arguments regarding the applicability, if any, of the Federal Circuit's decision in *Johnson* in the first instance. Accordingly, at this time, the Court need not address the appellant's remaining arguments concerning extraschedular consideration. *See Quirin v. Shinseki*, 22 Vet.App. 390, 396 (2009) (holding that "the Court will not ordinarily consider additional allegations of error that have been rendered moot by the Court's opinion or that would require the Court to issue an advisory opinion").

## V. CONCLUSION

After consideration of the parties' pleadings and a review of the record, the appeal as to the Board's March 2014, decision granting (1) a 10% disability rating, but no higher, throughout the initial rating period for functional impairment of the right index finger; (2) a separate 10% evaluation, but no higher, from June 20, 2013, for a painful scar; and (3) an initial 10% evaluation, but no higher, for hypertension have been abandoned. The abandoned issues have not been reviewed by the Court on the merits, and the appeal as to those issues is DISMISSED. Upon consideration of the foregoing, the March 2014 Board decision denying a compensable rating under § 4.59 for painful motion of the right ring finger is AFFIRMED, the Board's decision regarding an extraschedular evaluation is VACATED, and the vacated matter is REMANDED for further adjudication.