# United States Court of Appeals for the Federal Circuit

---

**JEANINE FRAZIER,**
*Plaintiff-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2022-1184

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 19-7587, Judge Grant Jaquith.

---

Decided: May 5, 2023

---

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, argued for plaintiff-appellant.

JOSHUA E. KURLAND, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BRIAN M. BOYNTON, CLAUDIA BURKE, PATRICIA M. MCCARTHY; AMANDA BLACKMON, BRIAN D. GRIFFIN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

---

Before DYK, BRYSON, and PROST, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* BRYSON.

Concurring opinion filed by *Circuit Judge* DYK.

BRYSON, *Circuit Judge.*

Appellant Jeanine Frazier brought this appeal as a substituted appellant for her deceased father, Clarence Frazier, a veteran. She is seeking accrued benefits that she claims were due to Mr. Frazier. She challenges the decision of the Court of Appeals for Veterans Claims ("the Veterans Court") that Mr. Frazier was not entitled to compensation for the residual effects of injuries to two of his fingers. We affirm the decision of the Veterans Court.

I

Mr. Frazier served on active duty in the United States Navy from June 1988 to April 1993. In 2008, after his retirement, Mr. Frazier fractured the fourth and fifth fingers of his right hand when he ran into a television set after being startled from a nightmare. J.A. 91. Such nightmares, according to Mr. Frazier, occurred frequently due to post-traumatic stress disorder ("PTSD"), a disability for which Mr. Frazier had previously been awarded service connection. J.A. 65. In December 2010, Mr. Frazier filed a claim with the Department of Veterans Affairs ("DVA"), asserting that the injury to his fingers was secondary to his service-connected PTSD. *Id.* In his submissions to the DVA regarding that claim, Mr. Frazier explained that following his injury in 2008 he had trouble bending his fingers and experienced joint pain in those fingers. *Id.*

The DVA regional office denied Mr. Frazier's claim, finding that the injury to his fingers was not related to his service. J.A. 77–78. Mr. Frazier appealed that decision to the Board of Veterans' Appeals, which remanded his claim to the regional office in January 2016 for further development of the record. J.A. 168–80.

Mr. Frazier subsequently underwent a DVA medical examination. During that examination, he reported that he had "flare-ups" in which he would have "difficulty holding objects" and moving his fourth and fifth fingers. J.A. 196. The examining physician noted that Mr. Frazier experienced pain in his right hand. The physician added, however, that the pain "does not result in/cause functional loss," that the range of motion in Mr. Frazier's right hand was "all normal," that his hand strength was normal, and that his finger joints showed no signs of ankylosis.[1] J.A. 197–98, 202–03. The physician also expressed the opinion that the injury to Mr. Frazier's fingers was secondary to his service-connected PTSD. J.A. 186–87.

In May 2018, the Board granted Mr. Frazier service connection for the injury to his fingers, J.A. 224, but the regional office on remand assigned Mr. Frazier a non-compensable rating for that injury, J.A. 234–35. The regional office evaluated Mr. Frazier's injury under Diagnostic Code 5230, which covers "[a]ny limitation of motion" to the ring or little finger but provides a zero percent rating for that condition. 38 C.F.R. § 4.71a, DC 5230; J.A. 235–36. Mr. Frazier appealed the regional office's rating decision to the Board, which affirmed the rating decision. J.A. 304–09.

Mr. Frazier appealed the Board's decision to the Veterans Court. He contended that he was entitled to a compensable rating of 10 percent under 38 C.F.R. § 4.59. That regulation provides, in pertinent part:

> The intent of the schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. It is the intention to recognize actually painful, unstable, or malaligned

---

[1] "Ankylosis" refers to immobility and consolidation of a joint due to disease, injury, or surgical procedure. J.A. 3.

> joints, due to healed injury, as entitled to at least
> the minimum compensable rating for the joint.

Because he experienced pain in his fourth and fifth fingers, Mr. Frazier argued that section 4.59 entitled him to "at least the minimum compensable rating for the joint." He based that claim on Diagnostic Codes 5219 and 5223, which provide 20 percent and 10 percent ratings, respectively, for unfavorable and favorable ankylosis of the ring and little fingers. 38 C.F.R. § 4.71a, DC 5219, 5223.

The Veterans Court affirmed the Board's decision. The court rejected Mr. Frazier's argument that he was entitled to a 10 percent rating based on Diagnostic Codes 5219 and 5223. The court noted that the Board had expressly found that the fingers of Mr. Frazier's right hand were not fixed in favorable or unfavorable ankylosis, which are the conditions covered by Diagnostic Codes 5219 and 5223. J.A. 5. Instead, the court held, the Board properly focused on Diagnostic Code 5230, which covers limitations of motion in the ring or little fingers. In analyzing the application of section 4.59 to a condition covered by Diagnostic Code 5230, the court relied on its prior decision in *Sowers v. McDonald*, 27 Vet. App. 472 (2016), the facts of which are nearly identical to the facts of this case. J.A. 6.

In *Sowers*, the Veterans Court held that a veteran who experienced pain in his fingers but was awarded a non-compensable rating under Diagnostic Code 5230 was not entitled to a 10 percent rating under 38 C.F.R. § 4.59. 27 Vet. App. at 482. In so holding, the court in *Sowers* explained that Diagnostic Code 5230 provides for a zero percent rating for limitations of motion in the little or ring fingers, and that section 4.59 does not "create a freestanding painful motion disability that is always entitled to a 10% disability rating." *Id.* Following *Sowers*, the Veterans Court held that because Mr. Frazier did not have "any ankylosis related to his fingers disability," it

would be "illogical" to use section 4.59 to award a minimum compensable rating based on the diagnostic codes concerning ankylosis of multiple joints.  J.A. 6.  This appeal followed.

## II

We must affirm the decision of the Veterans Court unless it is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or (D) without observance of procedure required by law."  38 U.S.C. § 7292(d)(1).  Our review is limited to challenges to the "validity of any statute or regulation or any interpretation thereof . . . , and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision."  *Id.* § 7292(c).

## A

Before the Veterans Court, Mr. Frazier argued that the two diagnostic codes for ankylosis of the ring and little fingers, Diagnostic Codes 5219 and 5223, "should have been applied when considering whether a compensable rating was available 'for the joint' pursuant to section 4.59."  Appellant's Br. 7, *Frazier v. Wilkie*, No. 19-7587 (Vet. App. June 2, 2020).  Both of those diagnostic codes have minimum compensable ratings greater than zero.

Before this court, Ms. Frazier frames her argument somewhat differently.  She does not argue that Diagnostic Code 5230 was the wrong diagnostic code for Mr. Frazier's disability.  Instead, she claims that even for a condition clearly falling under Diagnostic Code 5230, section 4.59 of the regulations contains a freestanding requirement for the DVA to grant at least a 10 percent rating for any

service-connected joint condition that is associated with pain.[2]

Ms. Frazier relies on the statement in section 4.59 that the "intent of the schedule" is to recognize joint pain "as productive of disability," and therefore "entitled to at least the minimum compensable rating for the joint." 38 C.F.R. § 4.59. Based on that language, she argues that section 4.59 requires at least a 10 percent compensable rating for a painful joint injury if there is at least a 10 percent rating under any diagnostic code applying to any injury to that joint or joints. That means that Mr. Frazier's injury to his fourth and fifth fingers would be entitled to at least a 10 percent compensable rating because that is the "minimum compensable rating" for any injury to those joints, including injuries rated under diagnostic codes that have no application to Mr. Frazier's condition. In pressing that argument, Ms. Frazier urges this court to repudiate the Veterans Court's decision in *Sowers*.

When construing a regulation, we begin with "the regulatory language itself to determine its plain meaning." *Goodman v. Shulkin*, 870 F.3d 1383, 1386 (Fed. Cir. 2017). In addition, we are required to "carefully consider the text, structure, history, and purpose of a regulation" when determining its meaning. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) (cleaned up). For several reasons, those principles lead us to agree with the interpretation of section 4.59 that the Veterans Court adopted in *Sowers* and applied in this case.

1.   The text, structure, and purpose of the DVA's regulations indicate that section 4.59 is intended to be read

---

[2] The government has not argued that Ms. Frazier has waived her present argument on the ground that it was not raised before the Veterans Court, so we do not address the issue of waiver.

in conjunction with the diagnostic code applicable to a particular case.  In 38 C.F.R. § 4.21, the Secretary of Veterans Affairs has made clear that a veteran's disability rating should be coordinated with the veteran's "impairment of function . . . in all instances."  The DVA has provided for flexibility in the rating schedule by allowing for "extraschedular" ratings in cases in which "application of the regular schedular standards is impractical because the disability is . . . exceptional or unusual."  *Id.* § 3.321(b)(1).  Similarly, sections 4.21 and 4.27 of the DVA Schedule for Rating Disabilities provide for rating by analogy and the creation of a custom diagnostic code "[w]hen an unlisted condition is encountered."  *Id.* § 4.21; *id.* § 4.27 (which applies "[w]hen an unlisted disease, injury, or residual condition is encountered").

By contrast, the language of section 4.59 is not addressed to situations in which the injury in question lacks an appropriate diagnostic code.  Rather, it applies to injuries that fall within particular diagnostic codes but are accompanied by pain.  We therefore read section 4.59 as applying in conjunction with the appropriate diagnostic code for a particular condition and requiring reference to that diagnostic code to determine the minimum compensable rating for the injury in question.[3]

2. Ms. Frazier points out that section 4.59 refers to "the minimum compensable rating *for the joint*."  38 C.F.R.

---

[3] At the oral argument in this appeal, counsel for Ms. Frazier argued that in cases in which a veteran's condition would be compensable under a particular diagnostic code for that condition, section 4.59 operates to add at least an additional 10 percent compensation under that diagnostic code when painful motion is present.  *See* Oral Arg. at 13:03–14:16.  That argument, although unpersuasive, suggests a recognition that section 4.59 must be read in conjunction with the rating schedule.

§ 4.59 (emphasis added).  Broadly construed, that language could be understood to mean that if a diagnostic code provides only a zero percent rating for a particular condition, the veteran may nonetheless be entitled to compensation under another diagnostic code that applies to the same joint.  For example, although Diagnostic Code 5230 does not provide a compensable rating for limitation of movement of the fourth and fifth fingers, the language of section 4.59 could be read to entitle the veteran to compensation under Diagnostic Code 5223, which provides a compensable rating of 10 percent for "favorable ankylosis" of those two fingers.  38 C.F.R. § 4.71a.  The same could be said for Diagnostic Codes 5155 and 5156, each of which provides a 10 percent rating for amputation of the fourth and fifth fingers, respectively.  *Id.*

The problem with that argument, as the Veterans Court in *Sowers* pointed out, is that reading section 4.59 that broadly would create an "absurd result" in which "an individual with only slight pain and occasional stiffness" in a finger "would be rated on par with an individual whose finger was amputated." 27 Vet. App. at 482.  Constructions of statutes and regulations that lead to anomalous results are "to be avoided if at all possible." *Pitsker v. Off. of Pers. Mgmt.*, 234 F.3d 1378, 1383 (Fed. Cir. 2000); *see also Smith v. Brown,* 35 F.3d 1516, 1523 (Fed. Cir. 1994) (noting that the canons of statutory construction also apply to regulations).  That consequence counsels against adopting Ms. Frazier's interpretation of section 4.59.

3. The Secretary's interpretation of section 4.59 is not only reasonable but is consistent with the interpretation of section 4.59 applied by the DVA both prior to and since the Veterans Court's decision in *Sowers*.  In a 2014 brief filed with the Veterans Court, the Secretary argued that "section 4.59 does not create a free-standing avenue for compensable ratings solely based on pain." Appellee's Br. 9, *Petitti v. Gibson*, No. 13-3469 (Vet. App. June 16, 2014).  Instead, the Secretary argued, "section 4.59 is a guide to

interpreting the rating schedule with respect to painful motion," and thus it "must be read in conjunction with the rating schedule." *Id.* The 2015 version of the DVA's Adjudication Procedures Manual likewise indicates that section 4.59 was intended to be read in conjunction with, and not separately from, the applicable diagnostic codes.[4] *See* U.S. Dep't of Veterans Affairs, M21-1 Adjudication Procedures Manual § III.iv.4.A.1.f (May 11, 2015). To the extent that the language of the Secretary's regulation is genuinely ambiguous, deference must be accorded to the Secretary's interpretation of that language, which is reasonable and, as the DVA's consistent interpretation of section 4.59 for at least the last nine years, reflects the "fair and considered judgment" of the agency. *See Kisor*, 139 S. Ct. at 2415–18.

4. In circumstances in which the rating schedule intends to allow for consideration of other diagnostic codes in a rating decision, it does so straightforwardly. For example, Diagnostic Code 5227, which applies to "ankylosis" of the fourth or fifth finger, instructs the rating agency to "consider whether evaluation as amputation is warranted and whether an additional evaluation is warranted for resulting limitation of motion of other digits or interference with overall function of the hand."

---

[4] A later version of the manual suggests that the position taken by the Secretary in *Sowers* represented a "change in longstanding VA policy in which the minimum compensable evaluation was interpreted as a 10-percent evaluation irrespective of the [diagnostic code] involved." U.S. Dep't of Veterans Affairs, M21-1 Adjudication Procedures Manual § V.iii.1.A.1.g (Nov. 5, 2021). In context, that statement is best understood as referring specifically to Diagnostic Code 5201, which contains a minimum compensable rating of 20 percent for a limitation of motion of the shoulder or arm. *See id.*; 38 C.F.R. § 4.71a, DC 5201.

38 C.F.R. § 4.71a, DC 5227.  And certain diagnostic codes for prosthetic implants allow for ratings "by analogy" under different diagnostic codes.  *Id.*, DC 5051–53, 5055–56. Diagnostic Code 5230, however, contains no indication that any other diagnostic code should be considered in the rating decision if Diagnostic Code 5230 applies to the claimant's condition.  As the Veterans Court has explained, "[t]he inclusion of criteria in one [diagnostic code] indicates that the Secretary's exclusion of that criteria elsewhere was purposeful."  *Sowers*, 27 Vet. App. at 480 (citing *Hudgens v. Gibson*, 26 Vet. App. 558, 561 (2014)).

5.  As the court in *Sowers* pointed out, "[e]very joint in the rating schedule has at least one [diagnostic code] with a 10% disability rating."  *Id.* at 481.  For that reason, adopting Ms. Frazier's interpretation of section 4.59 would "create a de facto 10% disability rating for painful motion," because there would always be a disability rating of at least 10 percent available somewhere in the diagnostic codes for a particular joint.  *Id.*  If the Secretary had intended that result, section 4.59 could simply have stated that a minimum percent disability rating would apply to any covered joint condition accompanied by pain.  But the reference to the "minimum compensable rating for the joint" suggests that a determination of the minimum compensable rating for a particular injury requires reference to the rating schedule for the particular injury in question.[5]

_____

[5] If section 4.59 had provided for at least the minimum compensable rating "for the disability" or "for the condition" in question, instead of "for the joint," there would be no room for doubt as to the meaning of the regulation; it would be clear that the applicable minimum compensable rating would be the minimum compensable rating in the diagnostic code applicable to the veteran's

6. Finally, the Secretary's interpretation of section 4.59 does not render that provision meaningless, nor must the regulation be treated as merely precatory, as the concurring opinion suggests. Section 4.59 specifically directs that painful, unstable, or malaligned joints are entitled to "at least the minimum compensable rating for the joint." And the regulation has effects for disabilities within diagnostic codes that contain both compensable and non-compensable ratings. For example, under Diagnostic Code 5261, a veteran who has a knee disability is entitled to one of several ratings, ranging from zero percent to 50 percent, depending on the angle to which the extension of the leg is limited. 38 C.F.R. § 4.71a, DC 5261. However, if the veteran would ordinarily be entitled to a zero percent rating based on the range of motion under Diagnostic Code 5261, section 4.59 would nevertheless entitle the veteran to a 10 percent rating, which is the minimum compensable rating available under Diagnostic Code 5261, if the veteran experienced pain throughout extension. *Id.*; *Sowers*, 27 Vet. App. at 478 n.6. Applying section 4.59 in a setting such as that one is consistent with the language and purpose of section 4.59, without creating a "freestanding painful motion disability that is always entitled to at least a 10% disability rating." *Sowers*, 27 Vet. App. 482.

As the concurring opinion points out, some diagnostic codes recognize pain as productive of a disability. *See, e.g.*, 38 C.F.R. § 4.71a, DC 5298; *id.* § 4.104, DC 7115; *id.* § 4.117, DC 7714. None of those diagnostic codes, however, relates to a joint. Rather than separately listing pain as a

condition. It seems highly unlikely that the choice of the phrase "for the joint" instead of "for the condition" or "for the disability" was intended to authorize reference to the entire set of diagnostic codes applicable to the joint in question, regardless of how different the injury might be from the injury under consideration.

criterion for each of the many diagnostic codes that apply to joints, the Secretary chose to express in section 4.59 that "painful motion with joint or periarticular pathology" is "productive of disability." *Id.* § 4.59. That choice is best respected by the interpretation of section 4.59 advocated by the Secretary and adopted by the Veterans Court.

B

Ms. Frazier also makes the more sweeping contention that the Secretary is barred by statute from adopting disability ratings of zero, and therefore it was impermissible for the DVA to rate Mr. Frazier's disability at zero percent. Appellant's Br. 7–9; Appellant's Reply 4–5, 10. She relies principally on 38 U.S.C. § 1155, which provides for "ten grades of disability and no more," ranging from 10 percent to 100 percent, and 38 U.S.C. § 1114, which sets the rates of compensation for those ten grades of disability. Because there is no grade of "non-compensable" disability listed in either statute, Ms. Frazier argues that Congress "did not provide for any such noncompensable rating," Appellant's Br. 8–9, and that Mr. Frazier was therefore entitled to a minimum rating of 10 percent under section 4.59.

The premise of that argument is wrong. Various veterans' benefits statutes refer to non-compensable disabilities and thus contravene Ms. Frazier's argument that the existence of a "disability" necessarily mandates a compensable rating. For example, 38 U.S.C. § 1710 makes clear that ratings can be either compensable or non-compensable. Section 1710(a)(2)(A) provides that a veteran may qualify for a range of medical services if the veteran has "a compensable service-connected disability." By contrast, section 1710(a)(1)(A) states that the DVA may provide a narrower range of medical services to "any veteran for a service-connected disability," which indicates that a veteran with a service-connected condition is eligible for that narrower range of DVA medical treatment

regardless of whether the condition is compensable or non-compensable. Similarly, 38 U.S.C. § 1712(a)(1) provides additional dental services for a "dental condition or disability" that is "service-connected and compensable in degree" as compared to such a condition or disability that is "service-connected but not compensable in degree."

Congress's recognition of a disability of less than 10 percent, which results in no compensation, dates from the World War Veterans Act of 1924, which provided that "no compensation shall be paid for disability that resulted in a reduction in earning capacity rated at less than 10 per centum." Pub. L. No. 68-242, ch. 320, § 202(2), 43 Stat. 607, 618 (June 7, 1924). There is no indication that with the enactment of sections 1155 and 1114, Congress intended to dispense with the longstanding practice of recognizing non-compensable disabilities.

The Secretary has likewise frequently used the term "disability" in DVA regulations to refer to conditions that are non-compensable under the rating schedule. *See, e.g.*, 38 C.F.R. § 17.111 (exempting "[c]are for a veteran's non-compensable zero percent service-connected disability" from the copayment requirements of that section); *id.* § 17.108 (same); *id.* § 17.149 (authorizing the provision of hearing aids to certain veterans "who have service-connected hearing disabilities rated 0 percent"); *id.* § 17.161 (authorizing outpatient dental treatment for veterans "having a service-connected noncompensable dental condition or disability"); *id.* § 3.324 (authorizing the rating agency to apply a 10 percent rating when a veteran suffers from multiple service-connected disabilities but "none of the disabilities [are] of compensable degree"); *id.* § 17.36 (allowing "veterans receiving compensation at the 10 percent rating level based on multiple noncompensable service-connected disabilities" to enroll in the DVA healthcare system). In view of the repeated use of the term "disability" to include non-compensable conditions, we do not interpret the use of the term "disability" in section 4.59 as indicating

an intent by the Secretary to award at least a 10 percent rating whenever painful motion is present, regardless of the diagnostic code applicable to the underlying condition.[6]

For the reasons set forth above, we sustain the Secretary's interpretation of 38 C.F.R. § 4.59. The judgment of the Veterans Court is therefore affirmed.

**AFFIRMED**

---

[6] Ms. Frazier additionally relies on this court's decision in *Saunders v. Wilkie*, 886 F.3d 1356 (Fed. Cir. 2018), but that decision does not support her argument. In *Saunders*, the court concluded that pain can qualify as a disability for purposes of determining eligibility for service-connection under 38 U.S.C. § 1110 if it results in a functional impairment of earning capacity. *Id.* at 1368. *Saunders* does not suggest that pain, such as painful motion in a joint, must in all cases be deemed a compensable disability under the rating schedule. *See Martinez-Bodon v. McDonough*, 28 F.4th 1241, 1243 (Fed. Cir. 2022).

# United States Court of Appeals
# for the Federal Circuit

---

**JEANINE FRAZIER,**
*Plaintiff-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF
VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2022-1184

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 19-7587, Judge Grant Jaquith.

---

DYK, *Circuit Judge*, concurring.

I agree with the majority's affirmance of the Veterans Court's denial of compensation for Mr. Fraizer's finger injuries. I do not agree with the majority's conclusion that section 4.59, insofar as it deals with compensation for pain, is more than advisory and plays a role in other cases in interpreting diagnostic codes. *See* Majority Op. 11 ("[Section 4.59] has effects for disabilities within diagnostic codes that contain both compensable and non-compensable ratings.").

I

I read section 4.59 in this respect as entirely precatory. The relevant part of the regulation reads: "The intent of the

schedule is to recognize painful motion with joint or peri-articular pathology as productive of disability. It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint." 38 C.F.R. § 4.59. As is customary for precatory statements, the language in the regulation is not written in mandatory terms. By explicitly stating that the regulation is describing the "intent" of the schedule and expressing an "intention," it is clear that the language is goal-oriented, i.e., precatory. *See Music Square Church v. United States*, 218 F.3d 1367, 1370 (Fed. Cir. 2000).

The relevant part of section 4.59 is also vague and unclear, supporting the view that it was not meant to be applied directly. It is unclear which disability codes would be considered sufficiently related to joints to be covered by section 4.59 and whether only malaligned joints must be "due to healed injury" or whether painful, unstable, and malaligned joints must all be "due to healed injury." There is also no discernable logic to applying the pain upgrade only in the limited situations where the diagnostic code includes both compensatory and non-compensatory ratings. The majority's approach will inevitably lead to substantial litigation regarding the scope of section 4.59.

II

Viewing the regulation as mandatory also seems inconsistent with the authorizing statute. Section 1155 grants authority to the Secretary to "adopt and apply [the] schedule" for rating disabilities and states that "[t]he ratings shall be based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations." 38 U.S.C. § 1155. We have acknowledged that "the purpose of veterans compensation [is] to compensate for impairment to a veteran's earning capacity" and held that "[t]o establish the presence of a

disability, a veteran will need to show that her pain reaches the level of a functional impairment of earning capacity." *Saunders v. Wilkie*, 886 F.3d 1356, 1363, 1367–68 (Fed. Cir. 2018).

Pain can range from the trivial to the substantial and excruciating. Differences in pain amounts would surely have different effects on a veteran's ability to function and could range from no loss of function to total loss of function. Nonetheless, following the Secretary's interpretation of the regulation, the majority opinion concludes that without regard to the degree of pain 4.59 is mandatory in one respect—pain is compensable at the minimum compensable rating available if the veteran has a "disabilit[y] within [a] diagnostic code[] that contain[s] both compensable and non-compensable ratings." Majority Op. 11. In that event, a veteran who suffers pain is entitled to the lowest compensable rating. This rule does not take into account the degree of pain involved, whether it creates loss of function, or the effect of a veteran's pain on their earning potential, as required by statute. In my view, the majority interpretation is inconsistent with the statute.

## III

I do not minimize the fact that pain may be a significantly disabling condition. The regulations allow for extraschedular ratings "[t]o accord justice to the exceptional case where the schedular evaluation is inadequate to rate a single service-connected disability." 38 C.F.R. § 3.321(b)(1). This provision allows a veteran whose pain results in disability, as defined by statute as loss of earning capacity, to be fairly compensated. Some diagnostic codes also explicitly recognize pain as productive of disability in the context of certain diseases or conditions. *See, e.g.*, 38 C.F.R. §§ 4.104, DC 5298 (Coccyx removal), 4.117, DC 7115 (Thrombo-angiitis obliterans (Buerger's Disease)), 4.117, DC 7714 (Sickle cell anemia).

4                                                    FRAZIER v. MCDONOUGH

In my view, as currently written, the relevant parts of section 4.59 should have no role in evaluating veterans' disabilities under the diagnostic codes. If the existing codes do not sufficiently take account of disabling pain, the Secretary should consider revising the diagnostic codes to take better account of loss of function due to pain.