Citation Nr: 1749165 
Decision Date: 10/31/17 Archive Date: 11/06/17

DOCKET NO. 11-11 968 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Hartford, Connecticut


THE ISSUES

1. Entitlement to a disability rating higher than a single 10 percent rating for calcium chip-like deposits in the bursa of the bilateral elbows prior to April 20, 2017.

2. Entitlement to a disability rating higher than 10 percent for calcium chip-like deposits in the bursa of the right elbow as of April 20, 2017.

3. Entitlement to a disability rating higher than 10 percent for calcium chip-like deposits in the bursa of the left elbow as of April 20, 2017.

4. Entitlement to higher disability rating for service connected left carpal tunnel syndrome (CTS), rated as 20 percent disabling prior to April 20, 2017, and as 30 percent disabling since.

5. Entitlement to a total rating based on individual unemployability (TDIU) due to service-connected disability prior to April 20, 2017.

REPRESENTATION

Veteran represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

Michael Wilson, Counsel


INTRODUCTION

The Veteran served on active duty from September 1976 to September 1982.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a December 2009 rating decision issued by the Department of Veterans Affairs (VA) Hartford Regional Office (RO) in Newington, Connecticut. 

In an August 2014 decision, the Board, in relevant part, denied the Veteran's claims of entitlement to higher disability ratings for left carpal tunnel syndrome and calcium chip-like deposits in the bursa of the elbows. The Veteran appealed the Board's decision to the United States Court of Appeals for Veterans Claims (Court). In a February 2015 Order, the Court granted a Joint Motion for Partial Remand (Joint Motion) of the Veteran and the Secretary of Veterans Affairs (the Parties). In the Joint Motion, the Parties agreed that remand of the Board's decision to deny the claims of entitlement to a rating higher than 20 percent for left CTS, a rating higher than 10 percent for calcium chip-like deposits in the bursa of the elbows, and the Board's determination that a TDIU claim had not been raised by the record, was warranted, because the Board did not provide an adequate statement of reasons or bases for its decision as to these issues.

Subsequently, in April 2015, the Board, in relevant part, determined that the issue of entitlement to a TDIU was properly on appeal consistent with the Court's holding in Rice v. Shinseki, 22 Vet. App. 447 (2009). The Board then remanded the issue of entitlement to a TDIU together with the claims of entitlement to higher disability ratings for CTS and for calcium chip-like deposits in the bursa of the elbows to the Agency of Original Jurisdiction (AOJ) for further evidentiary development. The Board remanded the claims to the AOJ again for still further evidentiary development in July 2016.

In an April 2017 rating decision, the AOJ, in relevant part, increased the disability rating for the Veteran's left CTS to 30 percent; granted 10 percent disability ratings for calcium chip-like deposits in the bursa of each of the Veteran's right and left elbows; and granted entitlement to a TDIU, all effective April 20, 2017. The AOJ also granted service connection for limitation of supination and pronation for both the right and left elbows due to the calcium chip-like deposits, assigning 10 percent disability ratings for each elbow. The Veteran, however, did not appeal the rating assignment for the limitation of supination and pronation in each elbow; thus, those issues are not on appeal before the Board.

Although the AOJ did not address the issue of entitlement to a TDIU prior to April 20, 2017, in a supplemental statement of the case (SSOC) issued in April 2017, the assigned TDIU rating does not cover the entire appeal period. See AB v. Brown, 6 Vet. App. 35, 39 (1993) (a veteran is presumed to be seeking the maximum possible rating unless he indicates otherwise). Thus, the issue of entitlement to a TDIU prior to April 20, 2017, is on appeal before the Board. 

The issue of entitlement to a TDIU prior to April 20, 2017, is addressed in the REMAND portion of the decision below and is again REMANDED to the AOJ.


FINDINGS OF FACT

1. Throughout the entire appellate period, the Veteran's calcium chip-like deposits in the bursa of the bilateral elbows has been manifested by painful motion in each elbow, but not by a compensable level of limitation of motion. 

2. Prior to April 20, 2017, the Veteran's left CTS was manifested by no more than moderate, incomplete paralysis of the left (minor) median nerve. 

3. From April 20, 2017, the Veteran's left CTS has not been manifested by more than moderate, incomplete paralysis of the left median, radial, and ulnar nerves, which the AOJ has determined to be consistent with moderate, incomplete paralysis of all radicular groups. 


CONCLUSIONS OF LAW

1. The criteria for 10 percent disability ratings, but not higher, for calcium chip-like deposits in the bursa of both the right and left elbows have been met for the entire appellate period. 38 U.S.C.A. §§ 1155, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1-4.14, 4.45, 4.59, 4.71a, Diagnostic Codes (DCs) 5206 & 5207 (2016).

2. The criteria for a disability rating higher than 20 percent for left CTS, for the period prior to April 20, 2017, and for a disability rating higher than 30 percent, for the period from April 20, 2017, have not been met. 38 U.S.C.A. §§ 1155, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.2, 4.7, 4.10, 4.21, 4.123, 4.124, 4.124a, DC 8515 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist 

VA has a duty to notify and assist claimants in substantiating claims for VA benefits. See, e.g., 38 U.S.C.A. §§ 5103, 5103A (West 2014) and 38 C.F.R. § 3.159. In this case, VA provided adequate notice with respect to the higher rating claims in a letter sent to the Veteran in May 2009. 

VA has a duty to assist a claimant in the development of a claim. This duty includes assisting the claimant in the procurement of relevant treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. 

The Board finds that all necessary development has been accomplished; and therefore, appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). The Veteran's VA and identified private treatment records have been obtained, and he has been provided with VA examinations which are adequate for determining the level of severity of his service-connected left CTS and bilateral elbow disabilities.

The AOJ substantially complied with the Board's July 2016 remand directives by affording the Veteran VA examinations to assess the severity of his service-connected disabilities, including with respect to the effects of the disabilities on his employability. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999); Stegall v. West, 11 Vet. App. 268 (1998). 

There is no indication of additional existing evidence that is necessary for a fair adjudication of the Veteran's increased rating claims. Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist with respect to these claims.


II. Higher Disability Ratings 

 A. Applicable Law and Regulations

Disability ratings are determined by applying the criteria set forth in the VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10. 

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the Veteran's disability. 38 C.F.R. §§ 4.1, 4.2; Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991).

If the disability more closely approximates the criteria for the higher of two ratings, the higher rating will be assigned; otherwise, the lower rating is assigned. 38 C.F.R. § 4.7. It is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21. 

In deciding this appeal, the Board has considered whether separate ratings for different periods of time, based on the facts found, are warranted, a practice of assigning ratings referred to as "staging the ratings." Hart v. Mansfield, 21 Vet. App. 505 (2008). 

 B. Calcium chip Like Deposits in the Bursa of the Bilateral Elbows

The evidence reflects that the Veteran's service-connected bilateral elbow disabilities are manifested by pain in the elbow joints and limitation of motion of the joints. The disabilities were previously assigned a single 10 percent rating for both elbows in the December 2009 rating decision, effective March 31, 2009, based on complaints of pain with motion in the elbows. The AOJ later assigned each elbow a 10 percent disability rating for painful motion affecting each elbow based on the provisions of 38 C.F.R. § 4.59, which allows for at least the minimum compensable rating for a joint based on factors, including pain, affecting the joint, under 38 C.F.R. § 4.71a, DC 5206, effective April 20, 2017. 

Limitation of motion of the elbow joint is primarily rated under Diagnostic Codes 5206 (limitation of flexion of the forearm) and 5207 (limitation of extension of the forearm). Under DC 5206, limitation of flexion of either the major or minor forearm to 100 degrees warrants a 10 percent rating; limitation of flexion of either forearm to 90 degrees warrants a 20 percent rating; limitation of flexion of the major and minor forearm to 70 degrees warrants 30 and 20 percent ratings, respectively; limitation of flexion of the major and minor forearm to 55 degrees warrants 40 and 30 percent ratings, respectively; and limitation of flexion of the major and minor forearm to 45 degrees warrants 50 and 40 percent ratings, respectively. 38 C.F.R. § 4.71a, DC 5206. 

Under DC 5207, limitation of extension of either the major or minor forearm to 45degrees warrants a 10 percent rating; limitation of extension of either forearm to 75 degrees warrants a 20 percent rating; limitation of extension of the major and minor forearm to 90 degrees warrants 30 and 20 percent ratings, respectively; limitation of extension of the major and minor forearm to 100 degrees warrants 40 and 30 percent ratings, respectively; and limitation of extension of the major and minor forearm to 110 degrees warrants 50 and 40 percent ratings, respectively. 38 C.F.R. § 4.71a, DC 5207. 

Normal range of motion of the elbow is from 0 degrees on extension to 145 degrees flexion with pronation to 80 degrees and supination to 85 degrees. 38 C.F.R. § 4.71a, Plate I.

In determining the appropriate evaluation for musculoskeletal disabilities, particular attention is focused on functional loss of use of the affected part. Under 38 C.F.R. § 4.40, functional loss may be due to pain, supported by adequate pathology and evidenced by visible behavior on motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. Under 38 C.F.R. § 4.45, factors of joint disability include increased or limited motion, weakness, fatigability, or painful movement, swelling, deformity, or disuse atrophy. 

Where functional loss is alleged due to pain upon motion, the provisions of 38 C.F.R. § 4.40 and § 4.45 must be considered. DeLuca v. Brown, 8 Vet. App. 202, 207-08 (1995). Within this context, a finding of functional loss due to pain must be supported by adequate pathology, and evidenced by the visible behavior of the claimant. Johnston v. Brown, 10 Vet. App. 80, 85 (1997). Pain itself does not rise to the level of functional loss as contemplated by § 4.40 and § 4.45, but may result in functional loss only if it limits the ability to perform the normal working movements of the body with normal excursion, strength, coordination, or endurance. Mitchell v. Shinseki, 25 Vet. App. 32, 43 (2011). 

Additionally, in a recent decision, Correia v. McDonald, 28 Vet. App. 158 (2016), the Court held that 38 C.F.R. § 4.59 created range of motion testing requirements with which VA must comply. 38 C.F.R. § 4.59 provides that "joints involved should be tested for pain on both active and passive motion, in weight-bearing and non-weight-bearing and, if possible, with the range of the opposite undamaged joint." 

During VA examination of his elbows in May 2009, the Veteran reported that his elbow pain had worsened over the preceding five years. He reported having pain with any pressure on either elbow and that any extension of the elbow joints was painful, but that the pain was mostly in the olecranon itself. The Veteran was noted to be right hand dominant. He reported having flare-ups of joint disease that developed depending on his activity, occurring approximately once every two weeks, and lasting from two to four hours at a time. The flare-ups were precipitated by repetitive motion or being in the same position for a prolonged amount of time. He reported stopping all activity during flare-ups. 

On examination, there was no objective evidence of painful motion, edema, effusion, instability, weakness, tenderness, redness, heat, or abnormal movement. The Veteran did show mild guarding of the right elbow. Range of motion of the bilateral elbows was normal, from zero degrees extension to 140 degrees flexion, zero to 85 degrees supination, and zero to 80 degrees pronation. He did report having pain, and lack of endurance without incoordination. The examiner opined that the Veteran's bilateral CTS at least as likely as not contributed to his symptoms. 

During examination of the Veteran's elbows in June 2015, the Veteran described flare-ups in terms of a slow progression of severity in his elbow problems over the past 30 years. Range of motion testing again revealed all normal results for the bilateral elbows. There was no evidence of pain on weight bearing. The examiner noted that there was no objective evidence of localized tenderness or pain on palpation of both elbows. The examiner additionally noted that the Veteran did not experience pain, weakness, fatigability or incoordination that significantly limited functional ability of either elbow with repeated use over a period of time. The examiner indicated that he could not determine whether pain, weakness, fatigability or incoordination significantly limited functional ability with flare-ups without resorting to mere speculation. There was no loss of muscle strength or of ankylosis in either elbow. There was additionally no evidence of flail joint, joint fracture, ununited fracture, malaligned fracture, or impairment of supination or pronation.

The most recent VA examination of the Veteran's elbows was conducted in April 2017. He reported that his service-connected elbow disabilities had worsened with respect to repeated motion involving flexion and extension. He also report increased pain and decreases in ranges of motion. He reported having flare-ups with overuse or when performing repeated movements flexing or extending the elbows over and over again. Range of motion testing revealed right elbow flexion limited to 120 degrees, extension limited to 10 degrees, supination limited to 75 degrees, and pronation limited to 70 degrees. After repetitive motion, flexion was additionally limited to 110 degrees, extension remained the same, and supination and pronation were limited to 65 and 70 degrees, respectively. Left elbow flexion was limited to 130 degrees, extension was not limited, supination was limited to 75 degrees, and pronation was limited to 70 degrees. The left elbow range of motion was not additionally limited after repetitive motion. In compliance with the provisions of Correia, the examiner determined that there was evidence of pain with weight bearing and on passive motion in both elbows. There was additionally objective evidence of localized tenderness or pain on palpation of the joint. The examiner further noted that the Veteran had a slight reduction in muscle strength on flexion and extension in both elbows due to service-connected disability, however, no muscle atrophy was present. There was again no evidence of flail joint, joint fracture, ununited fracture, malaligned fracture, or impairment of supination or pronation.

The examiner indicated that opinions with respect to whether pain, weakness, fatigability or incoordination significantly limited functional ability with repeated use over a period of time or during flare-ups could not be provided without resorting to mere speculation because there was insufficient evidence or objective examination findings that would provide a reliable prediction of such decreased functional ability. 

The determinations of the VA examiners, that opinions with respect to whether pain, weakness, fatigability or incoordination significantly limited functional ability with repeated use over a period of time or during flare-ups could not be provided without resorting to speculation, do not appear to be in compliance with VA laws and regulations. See Sharp v. Shulkin, 29 Vet. App. 26, 33 (2017) (finding orthopedic examination inadequate with regard to flare-ups where the examiner declined to estimate the degree of additional limitation due to flare-ups because it would require resort to speculation). Given the lengthy procedural history of this appeal, however, and the discussion below reflecting the Board's consideration of the degree of additional loss of motion due to flare-ups indicated by the other evidence of record, another remand in order to again ask for these determinations would merely delay resolution of the claims and increase administrative burdens, with no foreseeable benefit flowing to the Veteran. Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (noting that "[a] veteran's interest may be better served by prompt resolution of his claims rather than by further remands to cure errors that, at the end of the day, may be irrelevant to final resolution and may indeed merely delay resolution); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (citing Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991)) (remand not required when it would impose unnecessary burdens on VA adjudication system with no benefit flowing to the Veteran). 

The Veteran has described flare-ups brought on after repetitive use of his elbows, with the primary symptom of pain, and there is no indication in the record that his pain, while present during motion, has resulted in any significant additional loss of range of motion. Additionally, while the bilateral elbows were shown to be minimally limited in range of motion on the most recent VA examination in April 2017, the right elbow was only limited to 120 degrees flexion and 10 degrees extension. The left elbow even less limited to only 130 degrees flexion and was no limitation in extension. Given the Veteran's current ratings of 10 percent for each elbow, in order to meet the diagnostic criteria for the next higher 20 percent ratings, the Veteran would have to be shown to be limited to 90 degrees flexion or 75 degrees extension; a difference of at 30 and 40 degrees extension and a difference of 65 and 75 degrees flexion, for the right and left elbows respectively. Based on the Veteran's testimony and the other evidence of record, the additional limitation of motion caused by flare-ups does not result in limitation of motion approximating that required for the next higher ratings; thus, even assuming significant additional loss of range of motion in the elbows after repetitive use over a period of time or during flare-ups, such additional limitation would not result in symptoms more nearly approximating the next higher 20 percent disability ratings. 

In making this finding, the Board also notes that the Veteran's persistent pain in both elbows, including on extension, has been present since at least the time of the May 2009 VA examination. Accordingly, pursuant to 38 C.F.R. § 4.59, the Board finds that the individual 10 percent disability ratings that were assigned by the AOJ after the April 2017 examination, are in order for the entire appellate period, not only since the time of that examination. See Sowers v. McDonald, 27 Vet. App. 472, 480 (2016); Petitti v. McDonald, 27 Vet. App. 415, 428-29 (2015) (a compensable rating is warranted for joint pain pursuant to 38 C.F.R. § 4.59 for orthopedic disabilities rated under diagnostic codes containing a compensable rating, and the criteria for such a rating can be satisfied with lay and other non-medical evidence).

The evidence fails to show that the Veteran is entitled to disability ratings higher than 10 percent for the service-connected elbow disabilities at any time during the appeal period, as he has not been shown on examination, or otherwise, to have sufficient limitation of motion to reach the next higher 20 percent rating or any ratings higher than this at any point during the course of his appeal, even with noted pain present during the extension motion of each elbow.

The Board has considered the applicability of other rating criteria for evaluating the musculoskeletal disabilities of the bilateral elbows under 38 C.F.R. § 4.71a; however, the Veteran at no point has been shown to have ankylosis, or impairment of the Flail joint, ulna, or radius. Moreover, while limitation of pronation and supination were found during the most recent VA examination, as noted, separate 10 percent ratings were assigned based on such impairment in the April 2017 rating decision, pursuant to DC 5213, and the Veteran did not appeal those ratings assignment. Thus, entitlement to higher or separate ratings based on application of other Diagnostic Codes under 38 C.F.R. § 4.71a is not warranted.

 C. Left Carpal Tunnel Syndrome 

In the December 2009 rating decision, the Veteran was assigned a 20 percent disability rating for left carpal tunnel syndrome under the provisions of 38 C.F.R. § 4.142a, DC 8515, for paralysis of the median nerve. The April 2017 rating decision awarded the 30 percent disability rating based on moderate, incomplete paralysis of all radicular groups of the minor upper extremity, pursuant to DC 8513. 

Under DC 8515, a 10 percent rating is warranted for mild incomplete paralysis of either the major or minor extremity; for moderate incomplete paralysis, a 30 percent rating is warranted for the major extremity and a 20 percent rating for the minor extremity; a 50 percent rating is warranted for severe incomplete paralysis of the major extremity and 40 percent for the minor extremity; and a 70 percent rating is warranted for the major extremity, and 60 percent for the minor extremity, for complete paralysis, with the hand inclined to the ulnar side, the index and middle fingers more extended than normal, considerable atrophy of the muscles of the thenar eminence, the thumb in the plane of the hand (ape hand); pronation incomplete and defective, absence of flexion of index finger and feeble flexion of middle finger, inability to make a fist, the index and middle finger remain extended; inability to flex the distal phalanx of thumb, defective opposition and abduction of the thumb at the right angle to the palm; weakened flexion of the wrist; and pain with trophic disturbances. 38 C.F.R. § 4.124a, DC 8515.

Diagnostic Code 8514 for paralysis of the musculospiral (radial) nerve allows for the same disability rating assignments based on the same level of severity of paralysis. Complete paralysis of the radial nerve involves drop of hand and fingers, wrist and fingers perpetually flexed, the thumb adducted falling within the line of the outer border of the index finger; cannot extend hand at wrist, extend proximal phalanges of fingers, extend thumb, or make lateral movement of wrist; supination of hand, extension and flexion of elbow weakened, the loss of synergic motion of extensors impairs the hand grip seriously. 

Under DC 8516 for paralysis of the ulnar nerve, a 10 percent rating is warranted for mild incomplete paralysis of either the major or minor extremity; for moderate incomplete paralysis, a 30 percent rating is warranted for the major extremity and a 20 percent rating for the minor extremity; a 40 percent rating is warranted for severe incomplete paralysis of the major extremity and 30 percent for the minor extremity; and a 60 percent rating is warranted for the major extremity, and 50 percent for the minor extremity, for complete paralysis, with "griffin claw" deformity, due to flexor contraction of ring and little fingers, atrophy very marked in dorsal interspace and thenar and hypothenar eminences; loss of extension of ring and little fingers cannot spread the fingers (or reverse), cannot adduct the thumb; and flexion of wrist weakened.

Diagnostic Code 8513 provides that mild incomplete paralysis is rated 20 percent disabling for either the major or minor extremity; moderate incomplete paralysis is rated 40 percent disabling for the major extremity and 30 percent for the minor extremity; and severe incomplete paralysis is rated 70 percent disabling for the major extremity and 60 percent for the minor extremity. Complete paralysis of all radicular groups is rated 90 percent disabling for the major extremity and 80 percent disabling for the minor extremity.

Diagnostic Codes 8510, 8511, and 8512 for the upper, middle, and lower radicular groups, respectively, provide that mild incomplete paralysis is rated 20 percent disabling for either the major or minor extremity; moderate incomplete paralysis is rated 40 percent disabling for the major extremity and 30 percent for the minor extremity; and severe incomplete paralysis is rated 50 percent disabling for the major extremity and 40 percent for the minor extremity. Complete paralysis of each radicular group is rated as 70 percent disabling for the major extremity and 60 percent disabling for the minor extremity.

A note following the rating criteria for peripheral nerve paralysis of the upper extremities provides that combined nerve injuries should be rated by reference to the major involvement, or if sufficient in extent, that radicular group ratings are to be considered. 

The term "incomplete paralysis" indicates a degree of lost or impaired function substantially less than the type pictured for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating should be for the mild, or at most, the moderate degree. 38 C.F.R. § 4.124a. The words "mild," "moderate," and "severe" are not defined in the Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are "equitable and just." See 38 C.F.R. § 4.6.

The Veteran underwent left carpal tunnel release surgery through a private provider in April 2008, prior to the commencement of the appeal period. An August 2008 private treatment report noted that he reported having weak, stiff hands. A January 2009 private treatment report indicated that based on nerve conduction studies, there was electrodiagnostic evidence of moderate left distal median neuropathy. Sensory nerve conduction studies of the bilateral ulnar nerves were normal. 

VA neurological examination of the Veteran's left upper extremity was conducted in July 2009. He reported that when he would wake up, he could not make a fist with both of his hands, but that his grip improved after an hour. He denied having numbness in the morning. He described that he would drop things a lot, and that he had difficulty holding a toothbrush and eating with a fork in the morning. The Veteran reported that his nerve pain would flare upon striking the wrist, and that this happened about one time per month. The examiner indicated that the Veteran had overall improved function following surgery, with reduced numbness with residual mild intermittent tingling. The Veteran also apparently reported that he had mild to moderate functional impairment. 

A December 2010 private evaluation indicated that the Veteran's CTS numbness was unchanged. An April 2011 VA electromyography/nerve conduction study report concluded that there was electrodiagnostic evidence for bilateral median neuropathies at the wrists, moderate on the left. The report also indicated that the Veteran's left ulnar sensory potential showed mildly reduced SNAP amplitude. Continuing VA treatment records, including additional nerve conduction studies, note the Veteran's ongoing median nerve neuropathy. 

The Veteran was again afforded a VA examination for his left CTS in June 2015. Symptoms included severe, constant pain; moderate paresthesias and/or dysesthesias; and moderate numbness in the left upper extremity. Muscle strength and reflex examinations revealed normal results. Decreased light touch sensation was noted in the left hand and fingers. The examiner concluded that the Veteran had moderate, incomplete paralysis of the left median nerve. No other nerve or nerve group was noted to be involved in the Veteran's left CTS at that time. 

The Veteran was afforded his most recent VA examination for left CTS in April 2017. He reported having worsening symptoms since his prior evaluation. Reported symptoms included moderate, constant pain, mild intermittent pain, moderated paresthesias and/or dysesthesias, and moderate number of the left upper extremity. Muscle strength testing revealed some decreased strength (four out of five) in regards to left wrist flexion and extension, and grip and pinch. Reflex examination revealed hypoactive results in the left bicep, triceps, and brachioradialis. Sensory examination again revealed decreased results in the left hands and fingers. The examiner concluded that the Veteran had moderate, incomplete paralysis of the left radial nerve, the left median nerve and the left ulnar nerve. The examiner did not indicate that the Veteran had paralysis involving the lower, middle, or upper radicular groups. 

Based on the foregoing, the Board finds that the evidence confirms that the assigned 20 percent disability rating prior to April 20, 2017, and the assigned 30 percent disability rating from that date forward are the most appropriate rating assignments for the Veteran's left CTS. Prior to the April 2017 VA examination, there was no indication of record that the Veteran had more than moderate, incomplete paralysis of the left (minor) median nerve. Although the June 2015 VA examination report noted that the Veteran had severe, constant pain in the left upper extremity, he was noted to have only moderate paresthesias and/or dysesthesias, and moderate numbness in the extremity. Additionally, the examiner clearly concluded that the evidence showed only moderate, incomplete paralysis of the left median nerve. Moreover, the plethora of medical evidence, both from VA and private providers, prior to the April 2017 VA examination shows that the Veteran has had no more than moderate neuropathy involving the left upper extremity. These reports additionally clearly indicate that there was no additional nerve involvement in the left upper extremity prior to April 2017, apart from the median nerve.

The 30 percent disability rating assigned effective the date of the April 2017 VA examination is based on the involvement of multiple nerves, incompletely paralyzed to a moderate degree, in the Veteran's left CTS. The multi-nerve involvement was discovered during the April 2017 VA examination. Although the examination report did not include findings that any particular radicular group was involved in the Veteran's left CTS, there was moderate, incomplete paralysis of the radial, ulnar and median nerves at that time. Thus, the assigned 30 percent disability rating assignment was made in order to encompass the Veteran's noted severity and multi-nerve involvement in his left CTS. A disability rating higher than 30 percent, however, is not shown to be warranted by the evidence of record. At no time during the appeal period has the Veteran been found to have signs or symptoms indicative of severe, incomplete paralysis or complete paralysis of any nerve or nerve group of the upper left extremity, such as to warrant higher 50, 60, or 80 percent disability ratings. 

As a final consideration, while the June 2015 and April 2017 VA examination reports noted that the Veteran had a surgical scar, measuring 5.5 centimeters by one centimeter, associated with the left CTS, the scar was not unstable or painful, and did not cover an area greater than 39 square centimeters; thus a separate compensable rating for the surgical scar is not warranted. See 38 C.F.R. § 4.118, DCs 7801, 7802, & 7804. 

III. Extraschedular Consideration 

The Board has considered the question of entitlement to an extraschedular evaluation under 38 C.F.R. § 3.321(b)(1). The threshold factor for extraschedular consideration is that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. See Thun v. Peake, 22 Vet. App. 111 (2008). 

The evidence in this case does not show that the symptoms associated with the Veteran's bilateral elbow disabilities or left CTS present an exceptional disability picture. Comparison between his symptoms and the criteria found in the rating schedule shows that the rating criteria reasonably describe his disability level and symptomatology--he has painful motion, otherwise at a noncompensable level, affecting both elbows, and his left CTS has been described as consisting of incomplete, moderate paralysis of the median nerve prior to April 2017, and as consisting of incomplete, moderate paralysis of the median, ulnar, and radial nerves as of that date. These are symptoms expressly contemplated by the schedular rating criteria. Thus, the Board need not consider whether the disabilities have caused marked interference with employment.

The Board notes that under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual condition fails to capture all the service-connected disabilities experienced. In the instant appeal, however, the record does not reflect an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for the combined effect of multiple service-connected disabilities. Accordingly, no basis for referring the case for an extraschedular consideration is presented in the present appeal.

In addition, entitlement to a TDIU has been granted from April 20, 2017. The Federal Circuit in Johnson indicated that the TDIU provision only accounts for instances in which a veteran's combined disabilities establish total unemployability, i.e., a disability rating of 100 percent. Id. at 1366. On the other hand, 38 C.F.R. § 3.321(b)(1) performs a "gap-filling" function. Id. It accounts for situations in which a veteran's overall disability picture establishes something less than total unemployability, but where the collective impact of a veteran's disabilities are nonetheless inadequately represented. Id. As the Veteran has been granted TDIU, he is deemed to have total unemployability and there is no "gap" to fill by § 3.321(b). Consideration of an extraschedular rating for this time period is therefore not warranted.


ORDER

Entitlement to a 10 percent disability ratings for calcium chip-like deposits in the bursa of the left elbow prior to April 20, 2017, is granted, subject to controlling regulations governing payment of monetary awards.

Entitlement to a 10 percent disability ratings for calcium chip-like deposits in the bursa of the right elbow prior to April 20, 2017, is granted, subject to controlling regulations governing payment of monetary awards.

Entitlement to a disability rating higher than 10 percent for calcium chip-like deposits in the bursa of the right elbow is denied. 

Entitlement to a disability rating higher than 10 percent for calcium chip-like deposits in the bursa of the left elbow is denied. 

Entitlement to a disability rating higher than 20 percent for left CTS for the period prior to April 20, 2017 is denied. 

Entitlement to a disability rating higher than 30 percent for left CTS for the period from April 20, 2017 is denied. 
REMAND

Although entitlement to a TDIU was awarded effective April 20, 2017, the assigned TDIU rating does not cover the entire appeal period; and therefore, the issue of entitlement to a TDIU prior to that date remains on appeal. See AB, supra. 

Generally, A TDIU may be awarded when the combined schedular rating for the service-connected disabilities is less than 100 percent and when it is found that the service-connected disabilities are sufficient to produce unemployability without regard to advancing age, provided that, if there is only one such disability, this disability is ratable at 60 percent or more, or, if there are two or more disabilities, there is at least one disability ratable at 40 percent or more and additional disabilities to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.341, 4.16(a). 

If these threshold criteria are not met, but the evidence reflects that a veteran is unemployable by reason of service-connected disabilities, the Veteran can receive an extraschedular TDIU. 38 C.F.R. § 4.16(b). The Board, however, is prohibited from assigning a TDIU on the basis of 38 C.F.R. § 4.16(b) in the first instance without ensuring that the claim is referred to the Director of Compensation Service for consideration of an extraschedular rating under 38 C.F.R. § 4.16(b). Bowling v. Principi, 15 Vet. App. 1 (2001). 

Here, the Veteran does not meet the schedular criteria for entitlement to a TDIU under 38 C.F.R. § 4.16(a), but the evidence raises the possibility that he was rendered unable to secure and follow substantially gainful employment prior to April 20, 2017. Therefore, the case should be submitted to the Director of Compensation Service for consideration for a TDIU prior to April 20, 2017, on an extraschedular basis.

Accordingly, this issue is REMANDED for the following action:

1. Refer the issue of entitlement to a TDIU prior to April 20, 2017, to the Director of Compensation Service, for consideration of entitlement to such TDIU on an extraschedular basis for that portion of the appeal period. 

2. If the benefits sought on appeal are not granted in full, issue an SSOC; and return the appeal to the Board, if otherwise in order.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims remanded by the Board or by the Court for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
Jonathan Hager
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs