# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 19-2495

MURETO C. HOLMES, APPELLANT,

v.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided November 25, 2020)

*Zachary M. Stolz* and *Kaitlyn C. Degnan*, who was on the brief, both of Providence, Rhode Island, for the appellant.

*William A. Hudson, Jr.*, Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; *Anna Whited*, Deputy Chief Counsel; and *Amanda M. Radke*, all of Washington, D.C., were on the brief for the appellee.

Before PIETSCH, MEREDITH, and FALVEY, *Judges*.

FALVEY, *Judge*: The appellant, Mureto C. Holmes, through counsel appeals a March 1, 2019, Board of Veterans' Appeals (Board) decision denying a rating above 50% for migraines. Mr. Holmes's appeal is timely and within our jurisdiction. *See* 38 U.S.C. §§ 7252(a), 7266(a).

This matter was submitted to a panel of this Court to address whether the rating criteria for migraines governed by 38 C.F.R. § 4.124a, Diagnostic Code (DC) 8100, contemplate non-headache symptoms. We hold that they do. As we explain, because DC 8100 rates migraines, a broader term than headaches, the DC contemplates more than just headache symptoms. Thus, the criteria require that VA consider all the symptoms the veteran experiences as a result of his migraine attacks, and then rate those symptoms based on the frequency, severity, and economic impact of the attacks. And so, we affirm the Board decision because Mr. Holmes fails to show that the Board clearly erred in finding that the rating criteria adequately compensate him for his migraine attacks.

## I. BACKGROUND

Mr. Holmes served in the Army from June 1994 to August 1996. In September 2009, he sought service connection for migraines, depression, anxiety, and stress. Record (R.) at 2090-92. In June 2010, a VA regional office (RO) granted service connection for migraine headaches, with a 50% disability rating, but denied service connection for depression, post-traumatic stress disorder, and a sleep disorder. R. at 1676-81. In the same rating decision, VA denied service connection for several other disabilities that are not relevant to this appeal. Mr. Holmes did not appeal this decision.

In July 2015, VA requested a medical examination to determine the status of Mr. Holmes's migraines. At an August 2015 examination, Mr. Holmes reported symptoms including headache pain, nausea, and sensitivity to light. R. at 1059. That same month, the RO issued a decision continuing the assigned 50% rating. R. at 993-96. Mr. Holmes disagreed with the 50% rating. R. at 982-83. He noted that he experiences sensitivity to light and blurred vision, and wore sunglasses as a preventive measure. *Id*. During his agency appellate process, Mr. Holmes sent in more documents reflecting that he suffers from light-headedness, mood swings, and nausea, and that his migraines lead to him experiencing dizziness, depression, and anxiety. R. at 794, 976. In March 2017, Mr. Holmes underwent another VA medical examination, confirming symptoms of head pain and sensitivity to light. R. at 830-31.

Following the examination, the RO issued a Statement of the Case continuing denial of a rating above 50%. R. at 807-28. Mr. Holmes perfected his appeal, thus bringing his case to the Board. In the decision on appeal, the Board found that Mr. Holmes's 50% rating under DC 8100—the diagnostic code for migraines—left him adequately compensated. R. at 7. The Board explained that this DC "contemplate[s] very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability." *Id*. Thus, it reasoned that "any symptoms related to the [v]eteran's headaches that are productive of economic inadaptability and/or that cause prostrating attacks are taken into consideration." *Id*. The Board arrived at this conclusion by delving into the meaning of migraines.

It noted that "a 'migraine' is defined as familial symptom complex of periodic attacks preceded by prodromal sensory symptoms and commonly associated with irritability, nausea, vomiting[,] constipation or diarrhea, and photophobia." R. at 8 (citing DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1166 (32d ed. 2012)). Based on this understanding, the Board concluded

2

that "[t]he rating criteria for migraines, by [their] very nature, contemplate the various manifestations of such disability by focusing on the overall functional impairment, rather than a demonstration of particular symptoms." R. at 8. Thus, it found the veteran's 50% rating was adequate because it "was assigned based on the severity, frequency, and duration of the symptoms reported by the [v]eteran and the resulting impairment of earning capacity." *Id*. And "[t]he [v]eteran has not specified any particular symptoms that are not contemplated by the relevant diagnostic criteria, as effects such as dizziness, anxiety, depression, isolation, nausea, etc., all address the nature of the headaches and effects on employment." *Id*.

## II. ANALYSIS

On appeal, the veteran argues that the Board clearly erred in finding that all his symptoms were contemplated by the rating criteria. Under his reading of the regulation, DC 8100 does not contemplate non-headache symptoms such as nausea, vertigo, mood swings, sleep impairment, anxiety, isolation, or depression. He also faults the Board for not considering separate ratings for those symptoms and argues that this stemmed from the Board abdicating its duty to maximize benefits.

In response, the Secretary challenges the factual basis of the appellant's argument. He disagrees that the Board found that all the symptoms the veteran attributes to his migraines were caused by the migraines. As the Secretary sees it, the Board only listed symptoms the veteran reported but did not decide that they are all caused by his migraines. Instead, the Board found that the symptoms at issue are all contemplated by the rating criteria, which consider whether the veteran's migraines cause prostrating attacks and then consider the frequency and duration of the prostrating attacks and whether they lead to severe economic inadaptability. The Secretary backs the Board's interpretation of DC 8100. Separately, the Secretary argues that the Board could not award separate ratings for all the alleged symptoms.

### A. Legal Landscape

We begin by addressing whether the Board correctly found that the 50% rating for DC 8100 adequately compensated the veteran. If the Board was correct that this rating adequately compensated the veteran for his migraines, that would be the end of this matter. Because this is a question of regulatory interpretation, we begin with the text of the regulation. *See Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993). If the plain meaning of the regulation is clear from its

language, then that meaning controls and "that is 'the end of the matter.'" *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006) (quoting *Brown v. Gardner*, 513 U.S. 115, 120 (1994)). Put another way, if the regulation is not ambiguous, the "regulation then just means what it means—and the court must give it effect." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019).

We thus turn to the text of DC 8100, the code that governs disability ratings for migraines. "With less frequent attacks," a veteran should be awarded a 0% rating. 38 C.F.R. § 4.124a, DC 8100 (2020). "With characteristic prostrating attacks averaging one in 2 months over last several months," the veteran receives a 10% rating. *Id.* "With characteristic prostrating attacks occurring on an average once a month over last several months," a veteran is entitled to a 30% rating. *Id.* A 50% rating—the rating at issue—is awarded "[w]ith very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability." *Id.*

The Court has previously analyzed the meaning of this DC when we held that DC 8100's criteria are successive—meaning that each level of the DC requires that the veteran also satisfy the lower levels. *Johnson v. Wilkie*, 30 Vet.App. 245, 247 (2018). On our way to that holding, we defined many terms in this regulation. "'Prostrating' means 'lacking in vitality or will: powerless to rise: laid low.'" *Id.* at 252 (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 1822 (1966)). Thus, we explained that, "[b]ecause DC 8100 specifically governs migraine headaches, the phrase 'characteristic prostrating attacks' plainly describes migraine attacks that typically produce powerlessness or a lack of vitality." *Id.* at 252. We then explained that the modifier "completely," as used before "prostrating" in the 50% criteria, meant that the veteran must be rendered entirely powerless and that "productive of severe economic inadaptability" means either producing or capable of producing severe economic inadaptability. *Id.* at 253.

Putting all this together, we see that the 50% rating for migraines is appropriate with very frequent, prolonged attacks that render the veteran entirely powerless and either cause or can cause severe economic inadaptability. This definition does not get us an answer here. To be sure, we can see that the rating criteria focus on attacks and differentiate between the different levels of disability based on the frequency, duration, and severity of those attacks, as well as whether they lead to or could lead to economic inadaptability. The rating criteria say nothing about headaches, nor do they focus only on the symptom of head pain. In fact, no specific symptoms are listed in the DC. But if migraines—the thing the veteran experiences during the attacks—refers solely to

4

headaches, this would mean that the regulation looks only to the severity, duration, frequency, and economic result of the veteran's headaches. In other words, the regulation would consider only headaches and not any other symptoms.

Thus, at its core, this case is about whether headaches and migraines mean the same thing. DC 8100 lays out the criteria for migraines, but if migraines mean only headaches, the DC just gives the criteria for headache attacks. And if they do mean the same thing, then the Board erred when it found that the veteran's rating compensated him for more than headaches. But if migraines include more than headaches, the Board was on the right track. Thus, we turn to deciding the meaning of migraines.

### B. Defining Migraines

As with any regulatory interpretation where the terms are not defined in the regulation, we presume those terms carry their ordinary dictionary meaning. *See Moody v. Wilkie*, 30 Vet.App. 329, 336 (2018) (per curiam). To this end, the Board used *Dorland's Medical Dictionary* to define migraines as "familial symptom complex of periodic attacks preceded by prodromal sensory symptoms and commonly associated with irritability, nausea, vomiting[,] constipation or diarrhea, and photophobia." R. at 8. This definition dovetails with other sources.

For example, a dictionary that straddles the time between when VA first created the rating schedule with DC 8100 in 1945 and then formally published in the Federal Register in 1964, defines migraine as "[a] nervous, pathological affection characterized by increasingly severe headache which is usually confined to one side of the head and is accompanied by nausea, vomiting and sensory disturbances." *Migraine*, WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY: SECOND EDITION UNABRIDGED 1071 (1957); *see also* 29 Fed. Reg. 6718, 6719 (May 22, 1964) (explaining the history behind VA's adopting the rating schedule).

The understanding of a migraine as including more than headaches has continued up to today. The online version of *Merriam-Webster* defines migraine as "a condition marked by recurring moderate to severe headache with throbbing pain that usually lasts from four hours to three days [and] is often accompanied by nausea, vomiting, and sensitivity to light or sound, and is sometimes preceded by an aura and is often followed by fatigue." *Migraine*, *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/migraine; *see also Migraine*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/migraineheadache/ symptoms-causes/syc-20360201 (explaining that "[a] migraine can

cause severe throbbing pain or a pulsing sensation, usually on one side of the head. [And is] often accompanied by nausea, vomiting, and extreme sensitivity to light and sound"). All these sources reflect that a migraine is a broad term that covers more than headaches.

This presents an opportune time to explain our reliance on dictionaries and address Mr. Holmes's concern with the Board's use of *Dorland's*. Mr. Holmes argues that the Board erred by relying on a dictionary to conclude that the migraine rating contemplates more than headaches because this means that the Board made its own impermissible medical determination. *See Colvin v. Derwinski*, 1 Vet.App. 171, 172 (1991), *overruled on other grounds by Hodge v. West*, 155 F.3d 1356 (Fed. Cir. 1998). This is not correct. Neither the Board, nor this Court, is turning to a dictionary to decide whether something is a symptom of migraines. Instead, we look to a dictionary to determine whether migraines include more than headaches. To be sure, it would be improper for the Board or this Court to look at a dictionary or treatise and use that to make a medical decision about whether a particular symptom results from the veteran's service-connected disability. *See Delrio v. Wilkie*, 32 Vet.App. 232, 242 (2019) (noting that VA adjudicators "generally lack the expertise or competence to opine on medical matters").

But that's not what's happening here. Our goal is not to replace a medical professional, but to determine what VA meant when it said that "*migraines*" "[w]ith very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability" should be rated as 50% disabling. 38 C.F.R. § 4.124a, DC 8100 (emphasis added). Did VA simply mean that *headaches* with very frequent, prolonged, and prostrating attacks and causing economic inadaptability should be rated at 50%? Or was VA referring to more than headaches? Answering this question is no different from what we did in *Johnson* when we defined the other terms in DC 8100. *See* 30 Vet.App. at 252-53; *see also Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule."); 38 U.S.C. § 7261(a)(1) (authorizing this Court to "decide all relevant questions of law, interpret constitutional, statutory, and regulatory provisions, and determine the meaning or applicability of the terms of an action of the Secretary"). Thus, let us then return to our task of interpreting DC 8100.

Recall that we just confirmed that migraine is a broader term than headache. With this piece of DC 8100 in place, we break down each element of the 50% rating. First, we have "migraines"—

the thing being rated and which we now know includes symptoms besides simply headaches. Next, we also already know that the 50% rating requires "very frequent completely prostrating and prolonged attacks." 38 C.F.R. § 4.124a, DC 8100. Or, in other words, the attacks must be frequent, prolonged, and render the veteran entirely powerless. Finally, the attacks must result or potentially lead to severe economic inadaptability. *Id.*; *Johnson*, 30 Vet.App. at 253. Putting this together, we see what VA looks to when it rates migraines and how it differentiates symptoms.

As we explained, the rating focuses on "attacks." It is the frequency, duration, severity, and economic impact of these attacks that differentiate the levels of disability in DC 8100. And because migraines include more than just headaches, we can see that the rating criteria must not be concerned merely with one symptom—the veteran's headaches, but also other things that he or she experiences because of migraine attacks. Thus, VA must look at everything the veteran experiences as a result of migraine attacks and then consider the frequency, duration, severity, and economic impact of those symptoms. Or as the Board put it, "[t]he rating criteria for migraines, by [their] very nature, contemplate the various manifestations of such disability by focusing on the overall functional impairment, rather than a demonstration of particular symptoms." R. at 8.

The bottom line is that the rating criteria for migraines contemplate all migraine symptoms. And so, we hold that DC 8100 contemplates more than just headache symptoms and requires that VA consider all the symptoms the veteran experiences as a result of migraine attacks, and then rate those symptoms based on the frequency, duration, severity, and economic impact of the attacks. *See* 38 C.F.R. § 4.124a, DC 8100. In other words, whatever symptoms the veteran experiences associated with migraine attacks, VA must consider when assigning a schedular disability rating. This is much like the severity, frequency, and duration analysis relevant to evaluating a psychiatric disorder under 38 C.F.R. § 4.130. *See Vazquez-Claudio v. Shinseki*, 713 F.3d 112, 116 (Fed. Cir. 2013). The disability levels for psychiatric disorders are "distinguished from one another by the frequency, severity, and duration of their associated symptoms." *Id.*

Mr. Holmes resists this reading by asking us not to defer to the Secretary's interpretation— which agrees with our own reading of the regulation. But we do not defer to the Secretary. We resolve this case based on the plain language of the regulation, thus leaving no room for ambiguity-resolving canons or deference to the Secretary's interpretation of his regulation. *See Kisor*, 139 S. Ct. at 2415. Mr. Holmes is also mistaken when he argues that this reading of the regulation

reads out the possibility of additional compensation for manifestations of migraines and the application of VA's duty to maximize benefits.

Our reading of the regulation does not foreclose the possibility that a veteran's migraines could cause or aggravate a separate disability that would then need to be compensated through other means, such as secondary service connection under 38 C.F.R. § 3.310(a). For instance, if a manifestation was noted to be constant, as opposed to just during migraine attacks, this may raise the possibility of a secondary disability. Likewise, if the veteran's migraines go beyond economic inadaptability and lead to the veteran being unable to secure substantially gainful employment, a total rating based on individual unemployability remains an option. *See* 38 C.F.R. § 4.16 (2020). And of course, the veteran's symptoms may raise extraschedular considerations if they present an exceptional case with symptoms more severe, frequent, or long-lasting than what is contemplated in the rating criteria—very frequent, completely prostrating and prolonged attacks, leading to economic inadaptability. *See* 38 C.F.R. §§ 3.321 (2020), 4.124a, DC 8100.

Besides, any difficulty of awarding additional compensation that may result does not render unreasonable VA's interpretation of the diagnostic code. Recall the rating for psychiatric disabilities. The Federal Circuit has read § 4.130 to encompass all psychiatric symptoms. *See Vazquez-Claudio*, 713 F.3d at 115-16. Yet there is no question that this does not render unreasonable the Secretary's rating criteria.

In the end, we may not strike down a valid interpretation of a diagnostic code simply because we find its plain text to be less favorable than other diagnostic codes. This Court "may not review the schedule of ratings for disabilities adopted under section 1155 . . . or any action of the Secretary in adopting or revising the schedule." 38 U.S.C. § 7252(b). The Federal Circuit has made clear that, absent a constitutional claim, we are prohibited from reviewing the validity of the rating schedule. *See Wanner v. Principi*, 370 F.3d 1124, 1131 (Fed. Cir. 2004). Thus, even if we found that the plain language of DC 8100 is less favorable to veterans than other diagnostic codes, we lack the authority to rewrite it to a more favorable one.

### C. Application to Mr. Holmes

Having found that DC 8100 contemplates more than headaches, we turn to the Board's decision as applied to Mr. Holmes's case. This ultimately proves a short inquiry.

At the outset, we agree with Mr. Holmes that "[t]he Board associated several of [his] non-headache symptoms, including dizziness, anxiety, depression, isolation, and nausea, with his

migraine headaches." Appellant's Br. at 6.[1] The Board laid out the evidence of the veteran's symptoms that it considered when assigning his rating. R. at 7-8. As part of this analysis, the Board did not make any unfavorable determinations that the symptoms did not result from appellant's migraines. *Id.* This is a favorable finding that we may not disturb. *See* 38 U.S.C. § 7261(a)(4) (permitting review only of "adverse" material findings).

At the same time, the Board did not find that Mr. Holmes has separate disabilities that are caused or aggravated by his migraines. Instead, the Board accepted the veteran's statements that when he has migraines, he experiences symptoms like nausea, dizziness, or "mood swings from okay, to depressed" and not wanting to be around people. R. at 795. We understand both the Board's finding and Mr. Holmes's primary position to be that he suffers from feelings of depression or anxiety associated with his migraines, not that he has separate diagnosed disabilities secondary to his migraine disability.[2]

After laying out Mr. Holmes's symptoms, the Board found that all the symptoms were adequately compensated by a 50% rating because the rating is "based on the severity, frequency, and duration of the symptoms reported by the [v]eteran and the resulting impairment of earning capacity." R. at 8. We have explained that the Board's conclusion—that the rating criteria contemplate more than just headaches—was correct. This largely controls the result of this case. Mr. Holmes focused his argument on fighting the definition used by the Board; he did not explain

---

[1] As we explained, it is the role of the factfinder to decide whether something is a symptom of migraines based on the evidence before it. Our decision should not be read as establishing a list of migraine symptoms; we do not decide whether something is a symptom of a migraine. Our role is to review that finding. Here, Mr. Holmes agrees with the Board about what is a symptom of his migraines.

[2] To the extent that Mr. Holmes may be arguing that the Board erred in failing to consider whether his migraines cause separate disabilities that may be compensated on a secondary basis, he has not demonstrated that any error on the part of the Board was prejudicial. *See* 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error"); *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). In his principal brief, he argued only that, under *Saunders v. Wilkie*, 886 F.3d 1356, 1364 (Fed. Cir. 2018), *undiagnosed* conditions—including vertigo, mood swings, sleep impairment, anxiety, isolation, and depression—could be compensated as separate disabilities. But the Court recently held that separate ratings for psychiatric symptoms are not warranted absent a diagnosis that conforms to the *Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition. Martinez-Bodon v. Wilkie*, 32 Vet.App. 393, 404 (2020). Further, Mr. Holmes has identified no evidence, other than his lay assertions, indicating an association between any diagnosed psychiatric conditions and migraines. And he has not explained how any undiagnosed non-psychiatric impairments "rise to a level to affect earning capacity." *Wait v. Wilkie*, __ Vet.App. __, __, 2020 WL 5200689, at *6 (Vet. App. Aug. 26, 2020). Rather, he points to diagnostic codes that reference those non-psychiatric impairments, without demonstrating the severity, duration, and frequency of his *own* manifestations of those conditions. *Cf. id.* at *7 ("Although the appellant may rely generally on VA's regulations to assert that VA recognizes [certain manifestations] as *the types* of manifestations that can cause functional impairment in earning capacity, he must also show that his manifestations are of sufficient severity, duration, and frequency that they effect his ability to function under the ordinary conditions of life.").

9

how he prevails if the Board's definition was correct. "[A]s a general rule, our system 'is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.'" *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (second alteration in original) (quoting *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in judgment)).

In other words, Mr. Holmes does not explain how the alleged symptoms of his migraines exceed the severity contemplated by the rating criteria. That is, he does not show that the Board erred by finding that his symptoms are not more severe than "very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability." 38 C.F.R. § 4.124a, DC 8100. Essentially, Mr. Holmes argued that the Board erred because the regulation considers only headaches. But, as the regulation considers more than just headaches—it considers all symptoms of a migraine—Mr. Holmes would have to prove that his symptoms are either more severe, frequent, or disabling; are longer lasting; or cause greater economic inadaptability than what the 50% rating in DC 8100 contemplates. He has not done so. Yet it is his burden to do so. *See Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (finding that the appellant bears the burden of proving error on appeal), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000).

The closest he gets is to argue that he has symptoms that are not listed in the dictionary definition used by the Board, thus leaving him uncompensated for those symptoms by the rating criteria. But he misunderstands what the Board did when it referenced the dictionary. The Board did not use the dictionary definition to establish an exclusive list of symptoms. Instead, it used that definition to conclude that DC 8100 "by its very nature, contemplate[s] the various manifestations of such disability by focusing on the overall functional impairment, rather than a demonstration of particular symptoms." R. at 8. Thus, we return to the fact that Mr. Holmes has not met his burden of showing error in the Board decision. His failure to do so leads us to affirm the Board decision and to leave the limits of DC 8100 to another day.[3]

---

[3] Because DC 8100 speaks of "attacks" and their frequency, secondary service connection or separate ratings may be a real possibility when some of a veteran's symptoms are constant. If something is always happening, it may no longer be reasonably measured by frequency of attacks. Would it simply be a single, long attack? At that point the Board may need to consider separate ratings or secondary service connection. Mr. Holmes has not argued that his symptoms cannot be characterized as very frequent and that their incidence is not tied to his migraine attacks. Nor do we discern clear error on the part of the Board as the veteran described his symptoms in relation to his migraine attacks. R. at 794-95. This is particularly true when we consider that Mr. Holmes has already been denied service connection

What's more, his remaining argument—that the Board failed to exhaust all schedular alternatives before proceeding to an extraschedular analysis—fares no better than his challenge to the Board's regulatory interpretation. Mr. Holmes relies on our decision in *Morgan v. Wilkie*, 31 Vet.App. 162 (2019), to support his argument.[4] In *Morgan*, we "h[eld] that VA's duty to maximize benefits requires it to first exhaust *all* schedular alternatives for rating a disability *before* the extraschedular analysis is triggered." *Id*. at 168. But we also explained that "[t]he Board is not required to discuss each of these tools in every case, but it must do so when possible schedular alternatives for rating a disability are either raised by the claimant or reasonably raised by the record." *Id*. And the "rating schedule must be deemed inadequate *before* extraschedular consideration is warranted." *Sowers v. McDonald*, 27 Vet.App. 472, 478 (2016) (emphasis added). Thus, if the Board was correct that all of Mr. Holmes's symptoms are adequately contemplated by the rating criteria, there is nothing for the Board to compensate on an extraschedular basis or through alternate means. *Id*.

To this end, because Mr. Holmes fails to show error in the Board's conclusion that his schedular rating was adequate, he cannot prove prejudicial error from the Board's extraschedular analysis. *See* 38 U.S.C. § 7261(b)(1) (requiring that when the Court concludes the Board errs, the Court must "take due account of the rule of prejudicial error"). As Mr. Holmes appears to recognize, if the Court finds no error in the Board's decision about his schedular rating, the issue of additional compensation for these symptoms becomes moot and the rule against pyramiding would kick in to prohibit separate compensation. *See* Appellant's Reply Brief at 14 (citing 38 C.F.R. § 4.14 (2019)). If the Board correctly found that DC 8100 compensates the symptoms that he alleges stem from his migraines, the Board had no more compensating left to do.[5]

---

for sleep issues and psychiatric problems.

[4] Neither party has asked us to stay this matter pending the outcome of *Long v. Wilkie*, U.S. Vet. App. No. 16-1537 (argued Aug. 28, 2019). And we note that Mr. Holmes is represented by the same counsel as Mr. Long. Because our resolution of this issue is resolved by noncontroversial precedent and the basic principle of the regulatory framework that extraschedular considerations arise only "where the schedular evaluation is inadequate," 38 C.F.R. § 3.321(b)(1), we find it appropriate to resolve this case while *Long* remains pending. *See Smiddy v. Wilkie*, 32 Vet.App. 350, 355 (2020).

[5] We stress that separate ratings, secondary service connection, or other schedular and extraschedular tools remain a viable option to adequately compensate those veterans with migraine symptoms that exceed the severity, duration, frequency, and economic impact covered by DC 8100. In Mr. Holmes's case, those options were unavailable because the Board found that all the symptoms are adequately compensated and he has not established error in that finding.

In the end, we affirm the Board decision. This is because we hold that DC 8100 requires that VA consider all the symptoms the veteran experiences because of his migraine attacks, and then rate those symptoms based on the frequency, duration, severity, and economic impact of those attacks. As Mr. Holmes has not shown that the Board clearly erred in finding that his migraines lead to very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability and that he is thus adequately compensated, he fails to meet his burden on appeal. *See Hilkert*, 12 Vet.App. at 151. We leave for another day the question of how frequent or severe a veteran's symptoms must be to fall outside what's contemplated by DC 8100.

### III. CONCLUSION

On consideration of the above and our review of the record, the Board's March 1, 2019, decision is AFFIRMED.