# United States Court of Appeals for the Federal Circuit

---

**KEVIN P. GOLDEN,**
*Claimant-Appellant*

**v.**

**DOUGLAS A. COLLINS, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2023-2070

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 21-2606, Judge Joseph L. Toth.

---

Decided: December 12, 2025

---

RYAN VALENTINE MCDONNELL, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Washington, DC, argued for claimant-appellant. Also represented by CHARLES COLLINS-CHASE, ELIZABETH D. FERRILL, THOMAS ERIC SULLIVAN.

EVAN WISSER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by CLAUDIA BURKE, GEOFFREY M. LONG, PATRICIA M. MCCARTHY, YAAKOV ROTH; Y. KEN LEE, ANDREW J.

STEINBERG, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

————————————

Before LOURIE, DYK, and CUNNINGHAM, *Circuit Judges.*

CUNNINGHAM, *Circuit Judge.*

Kevin P. Golden appeals a decision of the United States Court of Appeals for Veterans Claims ("Veterans Court"), which denied service connection for bilateral hearing loss and concluded that the Board of Veterans' Appeals ("Board") did not err by omitting discussion of a secondary service connection theory. *Golden v. McDonough*, No. 21-2606, 2022 WL 17335575 at *1 (Vet. App. Nov. 30, 2022) ("*Decision*"). For the reasons below, we affirm.

## I. BACKGROUND

Kevin P. Golden served in the Navy as a flight deck signalman from March 1984 to January 1988. *Decision* at *1; J.A. 1006; J.A. 3055. In 2009, Mr. Golden filed a claim with the Department of Veterans Affairs ("VA") seeking service connection for bilateral hearing loss and tinnitus, which was denied by the regional office ("RO") in 2010. *Decision* at *1; J.A. 2935–37; J.A. 2870–72. After Mr. Golden filed a notice of disagreement, the VA completed a medical examination of him in 2011. *See Decision* at *1; J.A. 2783–84; J.A. 2748–59; J.A. 2765–66. The examiner found that Mr. Golden's bilateral hearing loss was less likely than not caused by an in-service event or injury because his "[h]earing was found to be within normal limits bilaterally. . . at both the military enlistment and military separation exams." *Decision* at *1; J.A. 2755. With respect to tinnitus, the examiner noted that Mr. Golden first reported experiencing tinnitus during military service after exposure to loud noises. J.A. 2757. The examiner concluded that his tinnitus "is at least as likely as not (50% probability or greater) a symptom associated with the hearing loss, as tinnitus is known to be a symptom associated

with hearing loss." J.A. 2758; *see Decision* at *1. The report did not address whether Mr. Golden's tinnitus was service connected. J.A. 2748–59; *Decision* at *1.

In 2012, based on this examination report, the RO denied Mr. Golden service connection for his hearing loss and for his tinnitus. *Decision* at *1; J.A. 2661–82. In 2017, the Board concluded that Mr. Golden was entitled to service connection for his tinnitus and remanded his claim of service connection for bilateral hearing loss. *Decision* at *1; J.A. 2525–32. The Board indicated that although the 2011 examination report associated Mr. Golden's tinnitus with his hearing loss, it did not address Mr. Golden's reports that he first began to experience tinnitus during active service and did not provide a medical opinion regarding whether the tinnitus was related to service. *Decision* at *1; J.A. 2528. The Board explained that Mr. Golden's position as a signalman has been identified as a "military occupational specialty (MOS) with a moderate exposure to noise" and that Mr. Golden was "competent and credible to identify the presence of tinnitus since his period of active service." J.A. 2528–29; *see Decision* at *1. Therefore, the Board concluded that the evidence was "in relative equipoise" as to whether the tinnitus had started during Mr. Golden's service and "resolve[d] the benefit of the doubt" in his favor. J.A. 2529; *see Decision* at *1. With respect to his hearing loss, the Board noted that the examiner had failed to address evidence suggesting that Mr. Golden experienced some degree of hearing loss during service and remanded for a VA addendum opinion. *Decision* at *1; J.A. 2530.

After further rounds of examinations and medical opinions, the Board denied service connection for bilateral hearing loss in 2021. *See Decision* at *1–2; J.A. 1147–48; J.A. 1430–37; J.A. 1449–54; J.A. 1632; J.A. 2316; J.A. 1005–11. Of relevance to this appeal, the Board's 2021 decision did not include any discussion of a connection

between Mr. Golden's tinnitus and his bilateral hearing loss. *See generally* J.A. 1005–11.

Mr. Golden appealed to the Veterans Court. Before the Veterans Court, Mr. Golden argued that (1) the Board erred in its assessment of the nexus requirement for direct service connection of hearing loss, and (2) the Board failed to address a secondary service connection claim for hearing loss. *Decision* at *2. In November 2022, the Veterans Court affirmed the Board's judgment, finding no clear error in the Board's denial of direct service connection for hearing loss and concluding that Mr. Golden's secondary service connection theory was not reasonably raised by the record. *Id.* at *2–3.[1]

Mr. Golden timely appeals. We have jurisdiction under 38 U.S.C. § 7292.

## II.  STANDARD OF REVIEW

We "have exclusive jurisdiction to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof brought under this section, and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." 38 U.S.C. § 7292(c); *Middleton v. Shinseki*, 727 F.3d 1172, 1175 (Fed. Cir. 2013). We review legal determinations of the Veterans Court, including its interpretation of a regulation, de novo. *Williams v. Collins*, 131 F.4th 1325, 1327 (Fed. Cir. 2025).

---

[1]   The single judge's decision remained the decision of the court, *see* J.A. 3–4, and Mr. Golden's motion for review by the full Veterans Court was denied. *Golden v. McDonough*, No. 21-2606, 2023 WL 2967389, at *1 (Vet. App. Apr. 17, 2023).

### III. DISCUSSION

On appeal, Mr. Golden challenges the Veterans Court's determination that the Board did not err by omitting discussion of a secondary service connection theory. *See, e.g.*, Appellant's Br. 29 & 29 n.6. Mr. Golden argues that the Veterans Court erred in finding that secondary service connection for bilateral hearing loss was not reasonably raised by Mr. Golden or the record. *Id.* at 20–33. Mr. Golden also argues that the Veterans Court engaged in impermissible fact-finding in reaching this conclusion. *Id.* at 33–35. We address each argument in turn.

### A.

Mr. Golden argues that the Veterans Court relied on an incorrect interpretation of 38 C.F.R. § 3.310(a), the regulation governing secondary service connection, in concluding that a secondary service connection theory was not reasonably raised by the record. Appellant's Br. 22–33. This provision states:

> Except as provided in § 3.300(c), disability which is proximately due to or the result of a service-connected disease or injury shall be service connected. When service connection is thus established for a secondary condition, the secondary condition shall be considered a part of the original condition.

38 C.F.R. § 3.310(a); *see also* 38 U.S.C. §§ 1110, 1131 (providing the statutory authority for this regulation).

The core of the parties' dispute is whether a veteran seeking entitlement for secondary service connection must show a causal link between the secondary condition and an in-service disease or injury as opposed to the original condition for which the veteran was granted a direct service connection. *See, e.g.*, Appellant's Br. 5 ("The Veterans Court therefore should have considered whether the record had reasonably raised whether Mr. Golden's hearing loss was caused by his in-service injury of acoustic trauma.");

Appellee's Br. 9 ("Proper interpretation of [38 C.F.R. § 3.310(a)] compels the conclusion that a secondary condition must 'arise after, and as a result of, the original disability.'" (cleaned up and citation omitted)).  We therefore turn to addressing the question of what causal relationship must be established to demonstrate that the "disability . . . is proximately due to or the result of a service-connected disease or injury."  38 C.F.R. § 3.310(a).

"[W]e begin with 'the regulatory language itself to determine its plain meaning.'"  *Frazier v. McDonough*, 66 F.4th 1353, 1357 (Fed. Cir. 2023) (quoting *Goodman v. Shulkin*, 870 F.3d 1383, 1386 (Fed. Cir. 2017)).  "When interpreting a regulation, we start by exhausting all traditional tools of interpretation to determine whether the plain meaning of the regulation can be discerned or whether it is truly ambiguous."  *Cranford v. McDonough*, 55 F.4th 1325, 1328 (Fed. Cir. 2022) (citing *Kisor v. Wilkie*, 588 U.S. 558, 575 (2019)).  "If the regulatory language is clear and unambiguous, the inquiry ends with the plain meaning."  *Goodman*, 870 F.3d at 1386.

We hold that 38 C.F.R. § 3.310(a) requires that a veteran seeking a grant of secondary service connection must show a causal link between the secondary condition and an underlying primary condition for which service connection was granted.  The regulation is directed towards a "disability which is proximately due to or the result of a *service-connected* disease or injury."  38 C.F.R. § 3.310(a) (emphasis added).  The plain language of the provision provides additional context that indicates that the "service-connected disease or injury" refers to the underlying primary condition.  Notably, there would be little need for the regulation to create a "secondary condition" and "original condition" dichotomy if it did not require tracing the causal relationship between the secondary condition and the in-service disease or injury through an intervening condition.  *See, e.g.*, *Barry v. McDonough*, 101 F.4th 1348, 1352 (Fed. Cir. 2024) ("[T]he plain meaning that we seek to

discern is the plain meaning of the whole statute or regulation, not of isolated sentences." (citation omitted)); *Sullivan v. McDonald*, 815 F.3d 786, 790 (Fed. Cir. 2016) ("[W]e attempt to give full effect to all words contained within that statute or regulation, thereby rendering superfluous as little of the statutory or regulatory language as possible." (citation omitted)). The plain language of 38 C.F.R. § 3.310(a), read in the context of the entire regulation, indicates that "service-connected disease or injury" refers to the underlying primary condition.

Moreover, an interpretation of 38 C.F.R. § 3.310(a) that requires a direct causal link between the in-service injury and the "secondary condition" would render secondary service connection equivalent to direct service connection.[2] *See* 38 C.F.R. §§ 3.303–.305. Mr. Golden attempts to distinguish direct service connection from secondary service connection by arguing that a secondary service connection theory allows a claimant to use the fact that one disability is service connected "as evidence that [a] second [disability] should also be service connected to that same in-service injury." Oral Arg. 10:40–11:16, https://www.cafc.uscourts.gov/oral-arguments/23-2070_05082025.mp3. Mr. Golden argues that such an evidentiary connection exists here because the tinnitus and the hearing loss are "linked together as the tinnitus is a symptom of the hearing loss." Oral Arg. 9:33–40. Mr. Golden, however, points to no regulatory language or other authority supporting his proposed distinction. A court or tribunal examining a direct service

---

[2] Notably, the Veterans Court did consider whether there was a causal relationship between Mr. Golden's acoustic trauma and hearing loss in rejecting his direct service connection theory. *Decision* at *2–3. Mr. Golden does not challenge this determination. *See* Appellant's Br. 29 n.6.

connection theory for a condition—here, hearing loss—is not precluded from relying on symptomology for another condition—here, tinnitus—as relevant evidence in a direct service connection inquiry. *See, e.g.*, *Jandreau v. Nicholson*, 492 F.3d 1372, 1377 (Fed. Cir. 2007) (recognizing "lay testimony describing symptoms at the time supports a later diagnosis by a medical professional" as competent evidence to establish a diagnosis); *Stinson v. McDonough*, 92 F.4th 1355, 1364 (Fed. Cir. 2024) (instructing the Board to remand for further fact development, "including whether [the appellant's] in-service symptoms support a manifestation of [his disease] earlier than 2011"). Nor do we see a reason why a symptom should be excluded from consideration merely because it qualifies as a service-connected disability itself.

However, following established canons of construction that instruct us "to give full effect to all words contained within [a] statute or regulation, thereby rendering superfluous as little of the statutory or regulatory language as possible," we conclude the plain language of 38 C.F.R. § 3.310 requires demonstration of a causal link between a secondary condition and an underlying service-connected primary condition. *Sullivan*, 815 F.3d at 790 (citation omitted). This interpretation is also consistent with how this court and the Veterans Court have traditionally treated secondary conditions and service connection. *See, e.g.*, *Manzanares v. Shulkin*, 863 F.3d 1374, 1377 (Fed. Cir. 2017) (describing, favorably, the Veterans Court's holding in *Ross v. Peake*, 21 Vet. App. 528 (2008), *as amended* (Mar. 28, 2008), *aff'd sub nom. Ross v. Shinseki*, 309 F. App'x 394 (Fed. Cir. 2009), as noting that a secondary condition under § 3.310(a) is a "separate, additional disability" that is different from "the underlying primary condition"); *MacPhee v. Nicholson*, 459 F.3d 1323, 1327 (Fed. Cir. 2006) ("Under § 3.310, a condition that is proximately caused by a service-connected condition is considered a part of the original condition."). For the reasons

stated, we hold that a veteran must demonstrate a causal relationship between a secondary condition and an underlying primary condition to succeed under a secondary service connection theory.

Mr. Golden maintains that the Veterans Court conflated the terms "disability" and "disease or injury." Consequently, Mr. Golden argues that the Veterans Court improperly focused the inquiry on whether Mr. Golden's hearing loss was "proximately due to or the result of" his service-connected tinnitus rather than his in-service acoustic trauma. Appellant's Br. 20–26, 30–33. Under a proper interpretation of the regulation, Mr. Golden argues that he reasonably raised a secondary service connection argument. *Id.* at 26–30. We disagree.

Mr. Golden's focus on the difference between the regulation's use of "disability" and "disease or injury" is misplaced. The Veterans Court's conclusion that Mr. Golden failed to raise a secondary service connection theory was not based on whether tinnitus qualified as a "disease or injury" or as a "disability."[3] *See Decision* at \*3. Instead, the Veterans Court based its conclusion on the "proximately due to or the result of" requirement in the regulation, reasoning that "[t]here is no argument alleging his service-connected tinnitus *caused or aggravated* his hearing loss, nor, for that matter, how the two are etiologically related." *Id.* (emphasis in original). In other words, the Veterans Court's analysis effectively treated the "disease or injury" requirement as satisfied (to Mr. Golden's benefit) and instead concluded that Mr. Golden failed to allege another

---

[3]    The Secretary agrees that "disability" and "disease or injury" have different meanings. Oral Arg. 18:02–18:59. Because it does not affect the disposition of this appeal, we do not address whether the Veterans Court's usage of this terminology was accurate. *See Decision* at \*3.

required element—causation.  Therefore, Mr. Golden's arguments related to the meanings of "disability" and "disease or injury" are irrelevant to the issue at hand.

B.

Mr. Golden argues that the Veterans Court erred by impermissibly making the following fact-findings in the first instance:  (1) in granting service connection for tinnitus, finding that the Board relied on Mr. Golden's lay statements rather than the 2011 exam, and (2) finding that the 2011 exam was the only exam linking his tinnitus and hearing loss.  Appellant's Br. 33–35 (citing *Decision* at *3).  We disagree.

The Veterans Court did not engage in fact-finding by observing that the Board had "granted service connection for tinnitus based on Mr. Golden's lay statements, not the 2011 exam." *Decision* at *3.  The statement at issue merely represents the Veterans Court's characterization of the Board's decision.[4]  The Veterans Court is not precluded from "synthesizing," "analyzing," and "paraphrasing" the Board's decision, as these actions do not constitute independent fact-finding.  *See, e.g.*, *Chen v. Holder*, 703 F.3d 17, 23 (1st Cir. 2012).  Accordingly, we disagree with Mr. Golden's argument that the Veterans Court engaged in impermissible fact-finding in explaining the Board's rationale for granting service connection for tinnitus.

---

[4]    We do not think the Veterans Court's understanding of the Board's reasoning is inaccurate.  *See* J.A. 2528–29 (noting that the 2011 examination report did not address the etiology of Mr. Golden's tinnitus and instead basing its conclusions largely on Mr. Golden's own reports regarding his tinnitus).

The Veterans Court also did not err in concluding that, after the 2011 exam, "no subsequent examiner linked the veteran's hearing loss to his service-connected tinnitus." *Decision* at \*3. While the Board never explicitly made such a finding, *see generally* J.A. 1005–11, the Veterans Court is not limited to considering only the facts relied on by the Board and the VA but must consult the full agency record. *Newhouse v. Nicholson*, 497 F.3d 1298, 1302 (Fed. Cir. 2007). Here, the Veterans Court simply acknowledged that the record reflected that the 2011 examiner was the only examiner who linked Mr. Golden's hearing loss and tinnitus. *Decision* at \*3. Mr. Golden does not dispute this fact. *See* Oral Arg. 8:54–9:16. Accordingly, the Veterans Court permissibly recognized the lack of examination reports in the record that connected Mr. Golden's tinnitus to his hearing loss. We conclude that the Veterans Court's decision does not rely on impermissible fact-findings.

## IV. CONCLUSION

We have considered Mr. Golden's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm.

### AFFIRMED

### COSTS

No costs.